BUNYAN *et al.*, *by Next Friend*, v. CITIZENS' RAILWAY COMPANY, *Appellant*.

Division One, February 19, 1895.

1. **Railroad:** TRAVELER: NEGLIGENCE. A traveler approaching a railway company's track, whether its cars are operated by steam, electricity or by a cable, is required to use reasonable care to ascertain the approach of cars, and to avoid injury therefrom.

Bunyan v. Citizens' R'y Co.

2. ——: ——: ——. The company's servants in charge of its cars have the right to assume that such care will be observed, and are not required to stop until it is evident to one of reasonable judgment that it had been neglected and that the traveler had placed, or was about to place, himself in a situation of peril.

3. ——.: ——.: ——. It is, however, the duty of the company's servants to keep a vigilant lookout for persons on or approaching the track, and, when discovered to be in danger, to use every possible effort consistent with the safety of the passengers to avoid injuring such persons, and the previous negligence of the latter constitutes no defense to an action for an injury resulting from the neglect by the company of the foregoing duties.

4. ——: ——: ——: INSTRUCTIONS. An instruction which ignores the duty of the company's servant to prevent the injury so soon as he saw that the deceased was carelessly walking on the track, and limits its duty to avoid the injury to the time after deceased had placed himself in danger, is misleading and erroneous. ·

5. Appellate Practice: ERROR IN INSTRUCTIONS: NEW TRIAL. An order granting a new trial for error in an instruction will not be reversed on appeal, although the supreme court may be of the opinion, considering the charge as a whole, that such error was not sufficient to require a reversal of a judgment rendered against the appellant.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Smith P. Galt* for appellant.

(1) The court erred in sustaining plaintiff's motion for a new trial, there being no error in giving and refusing instructions. (2) Plaintiff's instruction number 4 was properly refused because it was too general in its terms. (3) Plaintiff's instruction number 1 was properly modified by the court. It is the duty of a person of mature years crossing the street upon which there is an approaching train of cars to look and see if the train is coming, and if by his going forward upon the track he puts himself in peril of the train, it is his duty not to so imperil himself, and the gripman has the right to

rely upon his performing this simple duty, and complying with this simple and easy requirement for his own safety, and need not stop the train before he is in peril. *Hickmann v. Railroad*, 47 Mo. App. 65; *Smith v. Railroad*, 52 Mo. App. 36; *Boyd v. Railroad*, 105 Mo. 371; *Moody v. Railroad*, 68 Mo. 470; *Zimmermann v. Railroad*, 71 Mo. 476; *Frick v. Railroad*, 75 Mo. 595; *Kelly v. Railroad*, 75 Mo. 138; *Rine v. Railroad*, 88 Mo. 392; *Yancey v. Railroad*, 93 Mo. 433; *Dunkman v. Railroad*, 95 Mo. 323; *Kelly v. Railroad*, 95 Mo. 279; *Guenther v. Railroad*, 95 Mo. 287; *Williams v. Railroad*, 96 Mo. 275; *Hilz v. Railroad*, 101 Mo. 36.

*Stone & Slevin* for respondent.

MACFARLANE, J.—This is an action by plaintiffs, as the minor children of John Bunyan, for the death of their father, on account of the negligence, as is alleged, of the employees of defendant in operating one of its trains of cars. The trial resulted in a verdict for defendant, which, on motion of plaintiff, was set aside and a new trial ordered. From the order granting a new trial defendant appealed.

The petition charges that John Bunyan was killed on May 24, 1890, by defendant's cars. The following is the charge of negligence made by the petition: "Plaintiff avers that said accident, whereby said John Bunyan was run over and killed, as aforesaid, was caused by the carelessness and negligence of defendant's said servants and employees in failing and neglecting to observe said John Bunyan approaching said tracks, and being on or near said tracks, in a position of danger, and in failing and neglecting and refusing to stop said car in time to have prevented the accident."

The answer was a general denial and a plea of contributory negligence. On the trial, evidence was intro-

duced by the parties tending to prove the issues made by the pleadings.

Stating the facts developed at the trial more in detail, it appeared that defendant operated a cable street railway along Easton avenue, in the city of St. Louis. On the twenty-fourth day of May, 1890, as a train of cars approached, John Bunyan, the father of plaintiffs, who the evidence tends to prove was more or less intoxicated, started about the center of a block to cross the street.   As he got upon the track of the railway he was struck by the cars and afterward died from the injuries received thereby.   The evidence tended to prove that the cars were in full view of deceased, and he either never looked to learn that they were approaching him, or paid no heed to them.   It also tended to prove that the gripman in charge of the car could have seen the danger to which the deceased had exposed himself in time, by proper care, to have avoided striking him.

At the request of the plaintiff, the court gave the jury this instruction:

"The court instructs the jury that if they believe from the evidence that the gripman in charge of defendant's car, by the exercise of ordinary care and prudence, might have discovered the deceased upon the track, or in a dangerous position before the car ran over him, and might then have stopped the car and avoided running over deceased, then you will find for the plaintiffs in the sum of five thousand (5,000) dollars.

Plaintiffs asked an instruction which the court amended and gave.  As amended by the words in italics, the instruction was as follows:

"The court instructs the jury that if they believe from the evidence that the gripman in charge of the car that did the injury, saw, or by the exercise of ordinary care, could have seen the deceased upon the

track, or approaching the same, *and so near thereto as to be in danger of being hurt by said car*, and thereafter could have prevented the injury to the deceased by the exercise of ordinary care, but failed or neglected to do so, then your verdict must be for the plaintiffs in the sum of five thousand (5,000) dollars, although you may believe the deceased was under the influence of liquor, or in a state of intoxication.''

This instruction, asked by plaintiff, was refused:

''The court instructs the jury that if they believe from the evidence that the deceased, John Bunyan, came to his death from the injuries received on the date mentioned in the petition by being struck by the gripcar of defendant through the negligence of the servants or employees of said defendant, then they will find a verdict for plaintiffs, unless you further find that the said injuries were primarily caused by the carelessness and negligence of the deceased.''

At the request of the defendant, the court gave these two instructions:

''1.    The court instructs the jury that it was the duty of the deceased, John Bunyan, before he attempted to cross the defendant's track, to look to see if there was a train approaching, and if he could see such train approaching, it was his duty to stop before reaching the track, and not place himself in a position of danger where he might be struck by the train, and if the jury believe from the evidence he could have seen the train if he had so looked, and he did not do so, and did not stop, but went on and stepped onto the track, immediately in front of the train, and so close to it that it could not be stopped after he had put himself in danger, before it struck him, then the court instructs the jury that their verdict must be for the defendant.

''2.    The court instructs the jury that the gripman was not obliged to stop the train when Bunyan

first stepped from the pavement, but had a right to rely on it that Bunyan would discharge his duty, and look and stop before the train would reach him, if his going on would endanger him; and if the jury believe from the evidence that the gripman was keeping a vigilant watch ahead and so soon as he saw or believed, or had reason to see and believe, that Bunyan would not stop, he tried his best to stop the train, then the jury will find their verdict for the defendant, notwithstanding Bunyan was injured by the train, and died from the effects of those injuries."

Other instructions were given at request of defendant. These declared in effect that though deceased was under the influence of liquor when struck, that fact alone would not excuse him from the use of prudence; that negligence could not be presumed from the mere fact of the injury; that the burden of proof was on plaintiff to prove negligence on the part of the gripman; and that in determining the issues the jury should consider all the circumstances in evidence.

A new trial was asked on the grounds, with others, that the court committed error in amending plaintiff's second instruction, in refusing the third, and in giving those asked by defendant. The court granted a new trial, as stated in the record, on account of "errors in giving and refusing instructions."

I. Plaintiff's second instruction, as asked, asserts, in effect, the proposition of law that it is the duty of the gripman of a street car operated by cable, to check or stop the car on seeing a pedestrian approaching the track, though no danger of a collision may then be apparent. To apply such a rule to the management of street cars would virtually suspend their operation altogether, or so embarrass it that the entire purpose for which this mode of transportation is designed would

be defeated. The duty of one approaching the track of a railroad, whether cars are operated thereon by steam, cable or electricity, to use reasonable precautions to ascertain the approach of cars, and to avoid injury therefrom, is so well settled in this state, that further consideration is deemed unnecessary. *Boyd v. Railroad*, 105 Mo. 371, and cases cited; *Hicks v. Railroad*, 124 Mo. 115, and cases cited; *Hickman v. Railroad*, 47 Mo. App. 65.

Those in charge of the car had a right to assume that these precautions would be observed, and they were not required to stop until it was apparent, to one of reasonable judgment, that they had been neglected and that the deceased had placed, or was about to place, himself in a situation of peril. The instruction as asked did not properly declare the law, and the amendment by the court was proper.

II. The very gist of the action, as charged in the petition, is that defendant's employees disregarded their duty, "in neglecting to observe deceased approaching the tracks, and being on or near the tracks, in a position of danger, and in failing and neglecting to stop said car in time to have prevented said accident." The specific negligence upon which plaintiffs relied for recovery was thus clearly and properly stated. The action is grounded upon the negligence of the gripman in failing in his duties after deceased had placed, or was about placing, himself in a dangerous position.

It was the duty of the gripman, and other employees, to keep a vigilant watch for persons on or approaching the track, and, when discovered in danger, to use every possible effort, consistent with the safety of passengers, to avoid striking them. This duty does not depend upon the fact that the person had negligently placed himself in the position of danger. The

previous negligence of such person would constitute no defense to an action for an injury resulting from neglect of these duties. *Hanlon v. Railroad*, 104 Mo. 389, and cases cited. *Fiedler v. Railroad*, 107 Mo. 645; *Hicks v. Railroad, supra.*

It is needless to remark that a recovery can only rest upon the cause of action stated in the petition, and that the instructions to the jury should be directed to the issues made by the pleadings and the evidence thereunder. Under the pleadings and evidence in this case but a single issue of negligence was left for the decision of the jury. The petition virtually admits, and the evidence conclusively shows, that deceased was himself guilty of negligence in going upon the track, and thus exposing himself to the danger of being struck. The cars were approaching him in plain view, and he either neglected to see them, or, seeing them, recklessly assumed the risk of crossing the track in safety in front of them. In either case he was negligent. Whether the gripman could have seen the danger and avoided the injury, by proper care, was the sole question of negligence in the case.

The first instruction asked by plaintiff and given by the court clearly and intelligently presented this issue to the jury. The instruction refused was faulty in that it enlarged the issues and authorized a verdict for any act of the employees of defendant, which might, in the judgment of the jury, amount to negligence. If the negligence mentioned had been properly understood by the jury to refer only to want of care after deceased exposed himself to danger, it added nothing to the advice given by the first instruction, and, for that reason, might have been refused. But we think the instruction was intended to refer to negligence occurring before the danger to deceased became apparent, and the jury would have so understood it.

This is, we think, apparent from the qualification given that the injuries were not "primarily caused by the carelessness and negligence of deceased." There was no evidence tending to prove negligence on the part of defendant's servants prior to the negligence of deceased in giving no heed to the approaching cars. The court committed no error we think in refusing this instruction.

III. The first instruction given at the request of the defendant exonerated it from liability, if deceased "stepped onto the track, immediately in front of the train, and so close to it that it could not be stopped after he had put himself in danger, before it struck him."

The gripman in charge of the car testified: "I first saw him (deceased) at the curbstone, I did not notice then that the man did not know what he was doing, but he walked right on and paid no attention; kind of looked up and then kept on going; then I saw that he was not going to stop and I hallooed, threw the rope and put on the brake. I could have stopped the car when I first saw him leave the curbstone, but I did not know but what he was paying attention to where he was going; I saw when he kept on walking that he was not paying attention, but was keeping on going. I could not tell that when he left the sidewalk." Again he testified: "I had no idea that he was going to cross when he left the sidewalk; soon as I saw it was his intention to cross, I put on the brakes; I did not notice that he was staggering as he first left the sidewalk. After that I noticed that he was staggering; when he was probably half way over; then I rang the bell, hallooed, and tried to stop the car."

The evidence also tended to prove that the distance from the curb to the track was ten or twelve feet; that deceased walked toward the track in a diagonal direc-

tion; that he was struck about the time he stepped over the first rail; and that the car only ran about five feet after he was struck.

The testimony of the gripman shows that he discovered that deceased was staggering and did not know what he was doing when at least five or six feet from the track.   It was his duty under these circumstances to have at once taken precautions to prevent the collision.   He should not have deferred action until the deceased had placed himself in a dangerous position, when it was manifest to him that he was heedlessly staggering into it.   This principal, dictated as it is by common humanity, was recognized by the gripman, for he says that on seeing that deceased was paying no attention, and did not seem to know what he was doing, he immediately warned him of the danger and used all possible efforts to avoid injuring him.

Now it will be seen that the instruction, which only required the gripman to attempt to avoid injuring deceased "after he had put himself in danger," fell short of declaring the whole duty required of him in the circumstances.   The primary object of this instruction was, evidently, to inform the jury as to the care required by deceased himself.   So far as the instruction was confined to this purpose the law was correctly given, but it did not declare the duty of the gripman as hereinbefore announced.   The jury could have drawn no other conclusion from the instructions than that the gripman, though seeing that deceased was staggering, was paying no attention, and was not going to stop, was still under no obligation to attempt to avoid striking him until "after he had put himself in danger."

It is true, the petition does not distinctly charge that the gripman could have discovered that deceased, when approaching the track, was not paying attention and would not stop.   But defendant's second instruc-

tion declares that the duty of the gripman required him to use his best endeavors to stop "as soon as he saw or believed, or had good reason to see and believe, that Bunyan would not stop." So it is evident that the case was tried on this theory by both parties.

The first instruction was clearly misleading and in conflict with other instructions given. It undertook to dispose of the whole case, and in effect directed a verdict for defendant, if deceased was himself negligent, unless the gripman failed in his duties after deceased had put himself in a position of danger. It wholly ignored the evidence of the gripman, and his duty to prevent the injury as soon as he saw that deceased was carelessly walking onto the track. The petition charged negligence in failing to stop the car in time to prevent the accident. This averment was sufficient to authorize the admission of evidence that the gripman knew that deceased was not going to stop, especially when no objection was made to it when offered. Indeed, this evidence was introduced by defendant itself. We are of the opinion that error was committed in giving this instruction.

In appeals from the action of the trial court in granting new trials on account of errors in law committed on the trial, we must assume, if found that error was committed, that the court regarded it as prejudicial. Though the error pointed out in this case, taking all the instructions together, may not have been sufficient to reverse a judgment, yet, in support of a judgment, we must presume that the court, with its better knowledge of the trial and the effect the error may have had upon the result, acted correctly. Judgment affirmed. All concur.