Hurt v. Ford.

In all respects, except as herein and heretofore modified, the judgment of the circuit court is affirmed. All concur.

HURT v. FORD *et al., Appellants.*

In Banc, January 18, 1898.

142    283
145    643

142    283
173    ⁶546
97a    ⁴313

1. **Practice:** JUDGMENT ON MOTION OF NON OBSTANTE VEREDICTO. A motion for judgment *non obstante veredicto* can only be sustained when it appears from the record that the allegations in the answer constitute no defense to the action, and when such motion is made *after* verdict and *before* entry of judgment on the verdict.

2. ———: MOTION FOR JUDGMENT ON THE PLEADINGS. A judgment on a motion for judgment on the pleadings may be rendered at any time after the pleadings are made up before verdict, and after the verdict is set aside, when the allegations of the answer constitute no defense.

3. ———: MOTION INSUFFICIENT FOR ONE PURPOSE SUFFICIENT FOR ANOTHER. A motion for judgment *non obstante veredicto* could not be sustained because it was not filed till after judgment was entered; but as the verdict was set aside (on the ground of error in refusing instructions) the motion *non obstante* will be considered as one for judgment on the pleadings, since it contains all the averments necessary to such a motion.

4. ———: DELIVERY OF NOTE IN ESCROW: PAYMENT OF INTEREST. The answer stated that the note in suit was delivered to plaintiff's agent to be held by him in escrow till the name of another party was obtained thereto, which was not done, but that the note was delivered to the payee and interest thereon was paid to her for two years. *Held,* that the doctrine of escrow can not arise; and as no fraud was charged, proof of this oral agreement by which the note was to become legally binding, not from its delivery according to its terms, but on its execution by this other party, is inadmissible, and a judgment on the pleadings was proper.

5. **Statute of Frauds:** PLEADING: GENERAL DENIAL. When the contract is denied it is not necessary to insist upon the statute of frauds as a defense or bar thereto.

6. —— : —— : —— : CASE STATED. The effect of a denial by plaintiff in her replication to defendants' answer of all allegations therein except as to the facts alleged in the petition, was to deny that she ever promised defendants or agreed with them that if they would become sureties on her brother-in-law's note for $8,500, she would pay the note at its maturity and otherwise hold them harmless; and as the contract was merely oral, and therefore within the statute of frauds, the plea of the statute as a bar to this defense was as well raised by the denial as it would have been by a special plea.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*John W. Beebe, I. N. Watson* and *R. T. Railey* for appellants.

(1) The motion for judgment *non obstante veredicto* was filed out of time. It should have been made upon the rendition of the verdict and before the entry of judgment. At least it should have been made within four days after verdict. 2 Tidd's Practice, p. 920; Freeman on Judg., p. 7; *State v. Bank*, 14 Miss. 215; *Schermerhorn v. Schermerhorn*, 5 Wend. 514; *Harrison v. Railroad*, 11 C. B. 541. (2) This motion is never resorted to in connection with a motion for a new trial. 2 Tidd's Practice, 920. (3) The theory for the motion for judgment, notwithstanding the verdict, was that upon the whole record the defendant never could make out a better case, either by repleading or by new evidence. Such judgment never was rendered, except in a very clear case; the court had to be satisfied that it was impossible for the defendant to make a better defense, either in respect of pleading or proof. *Pim v. Grazebrook*, 3 M. & G. 863; *Atkinson v. Davis*, 11 M. & W. 236; 2 Tidd's Practice, 922; *Schermerhorn, v. Schermerhorn*, 5 Wend. 514; *Bellows v. Shannon*, 2 Hill, 86; Black on Judg. [1891 Ed.] 16; Bouvier's Law

Dic., *voc. judgment.* (4) There was evidence to support the first count. That count states an original promise. Clark on Cont. 99; *Thomas v. Cook*, 8 B. & C. 728; (Overruled by *Green v. Crosswell*, 10 Ad. & E. 453.) Afterward followed in *Wildes v. Dudlow*, L., R. 19 Eq. 198; *Monstephen v. Lakeman*, L. R. 5 Q. B. 613; *Wagon Co. v. MaClure*, L. R. 19 Ch. Div. 478; *Guild v. Conrad* (1893) 2 Q. B. 885; Brown, Stat. Frauds, sec. 161, *et seq.; George v. Hoskins*, 30 S. W. Rep. 406; *Winn v. Hillyer*, 43 Mo. App. 143; *Calkins v. Chandler*, 36 Mich. 324; *Clifford v. Luhring*, 69 Ill. 401; *Crawford v. Edison*, 45 Ohio St. 239; *Killbride v. Moss*, 45 Pac. Rep. (Cal.) 812. (5) There was evidence to support the second count, and it states a good defense. A note may be placed in the hands of an agent or attorney as a technical escrow. He is a "third person," a "stranger unto the contract," and can only deliver upon performance of conditions imposed. He is the agent of both parties in such circumstances. 1 Shep. Touch. 59; *Watkins v. Nash*, 20 Eq. Cas. 262; *Railroad v. Iliff*, 13 Ohio St. 235; *Dietz v. Farish*, 12 Jones & Spencer, 190; *Price v. Home Ins. Co.*, 54 Mo. App. 119; Bishop on Contracts, sec. 356; *Ins. Co. v. Cole*, 4 Fla. 359; *Bank v. Bailasche*, 65 Cal. 327; *Friendly v. Lee*, 25 Pac. Rep. 396; *Humphreys v. Railroad*, 13 S. E. Rep. 985; *McLaughlin v. Wheeler*, 47 N. W. Rep. 823. (6) The evidence tended to support the third count. Parol evidence is admissible to show the conditions on which the note was received. This character of evidence is received not to vary, etc., the contract, "but to show that no contract was in fact consummated." *Pym v. Campbell*, 6 El. & Bl. 370; 6 English Ruling Cases, 168; *Guardhouse v. Blackburn*, L. R. 1 P. & D. 115; Clark on Contracts, p. 572; Chitty on Contracts [11 Am. Ed.], p. 159; *Nash v. Fugate*, 32 Gratt. 595; *Bell v. Ingestrie*, 12 A. & E. (N. S.) 316; 2 Wharton on Ev. 927; *Lindley*

*v. Lacy*, 17 C. B. 578; *Wallis v. Littell*, 11 C. B. N. S. 369; 31 L. J. C. P. 100; *McFarland v. Sykes*, 54 Conn. 250; *Juliord v. Chaffee*, 92 N. Y. 529; *Reynolds v. Robinson*, 110 N. Y. 654.

*Peak & Ball* and *C. O. Tichenor* for respondent.

(1) There are but two questions presented by the record in this case for the decision of the court. *First.* Did the trial court commit error in sustaining plaintiff's motion for a new trial? *Second.* Did the court commit error in rendering judgment for the plaintiff after a verdict had been returned for the defendants? (2) There are at least three errors in the ruling of the court, any one of which would have justified the court in setting aside the verdict. *First.* The court submitted the cause to the jury under the third count in defendant's answer on the theory that that count denied a delivery of the note. On this theory of the case it was undoubted error in the court to refuse plaintiff's instruction number 10. *Second.* The second error committed by the court was in refusing plaintiff's eighth instruction upon the subject of ratification. The question of ratification was distinctly raised by the pleadings. The plaintiff alleges in her petition that interest was paid, and this defendants admit, but in order to avoid the effect of the admission allege that the payments were made without the knowledge that the notes had not been signed by Hightower. *Ellison v. Weathers*, 78 Mo. 115; *Snyder v. Adams Express Co.*, 3 Mo. 376; *Boatmen's Savings Institute v. Forbes*, 52 Mo. 201; *Welsh v. Ferd Heim Brewing Co.*, 47 Mo. App. 608. *Third.* The third error committed by the court was its refusal to give plaintiff's instruction number 12. This instruction told the jury "that any statements Hightower may

have made to the defendants or others to the effect
that Mrs. Hurt would take up or pay said note given
in 1883 are not evidence in this case and the jury will
not consider any such statements." (3) Whatever
has been admitted on both sides in the pleadings can
not be controverted in the subsequent pleadings by
either party. McQuillin's Practice, sec. 272; Gould
on Pleading, sec. 168, p. 141; *Corler v. McCormick,* 4
Col. 196. It stands confessed of record for the pur-
poses of the trial. (4) Every allegation of a mate-
rial fact in the petition, which is not denied in the
answer, is deemed to be admitted. This is an inflex-
ible rule in pleading. R. S. 1889, sec. 2049; *Lee v.
Casey,* 39 Mo. 383; *Kansas City Hotel Company v.
Sauer,* 65 Mo. 279; *Marshall v. Ins. Co.,* 43 Mo. 586;
*Kenney v. Conifax,* 34 Mo. 147; *Wright v. Butler,* 64
Mo. 165; Boone's Code Pleading, sec. 64. (5) The
plaintiff in her amended petition alleges that the
note in suit "was made, executed and delivered to her
by the defendants." This is a material allegation,
and it is nowhere denied in either count of the defend-
ants' last amended answer. The unqualified and
unconditional delivery of the note, therefore, stands
admitted of record, and can not be retracted, contra-
dicted or denied, either in the subsequent counts of the
answer, or even by the verdict. *Pike v. Martindale,*
91 Mo. 286; *Breckinridge v. Ins. Co.,* 87 Mo. 69; *Weil
v. Poston,* 77 Mo. 284; *Wilson v. Albert,* 89 Mo. 537;
*Foley v. Alkire,* 52 Mo. 317. (6) The delivery of
a promissory note to the authorized agent of the payee
is an absolute and unqualified delivery. *Jones v.
Shaw,* 67 Mo. 670; *Henshaw v. Dutton,* 59 Mo. 139;
*Mossman v. Holscher,* 49 Mo. 87; *Railroad v. Stevens,*
10 Ind. 1; *Stewart v. Anderson,* 59 Ind. 375; *Wright v.
Railroad,* 16 Mon. 4; *Claim v. Easterly,* 118 Ind. 372;
*Duncan v. Pope,* 47 Ga. 445; *Scott v. Bank,* 9 Ark. 36.

(7) What in fact is this defense? No fraud; no mistake; no violation of any agreement; no equities between the parties to the paper interfered with by the suit, for Hightower never refused to sign this note; defendants never even asked him to do it. *Whittemore v. Obear*, 58 Mo. 286; *Whittemore v. Nickerson*, 125 Mass. 498. There never was but one doctrine upon this subject. *Clough v. Holden*, 115 Mo. 359; *Sandorn v. Batchelder*, 51 N. H. 434; *Hunt v. Silk*, 5 East, 449; *Clarkson v. Mitchell*, 3 E. D. Smith, 272; *Burge v. Railroad*, 32 Iowa, 105. (8) For thirty-six years the law of this State has been, as stated by Judge NAPTON in *Henshaw v. Dutton*, 59 Mo. 139: "If a note is procured by fraud there is no doubt such defense is available. If it is given upon contingencies not expressed in it, the failure of such contingencies can not be set up as a defense to the note. It can not be given to the obligee as an escrow. Such delivery must be made to a third person, not the obligee. Parol evidence is not admissible to vary the meaning of the note." The doctrine has been cited with approval in the following cases: *Smith's Adm'r v. Thomas*, 29 Mo. 307; *Mossman v. Holscher*, 49 Mo. 87; *State to use v. Potter*, 63 Mo. 312; *State to use v. Brown*, 64 Mo. 167; *Rodney v. Wilson*, 67 Mo. 123; *Jones v. Shaw*, 67 Mo. 667; *Gardner v. Mathews*, 81 Mo. 627; *State ex rel. v. Hewitt*, 72 Mo. 603; *State ex rel. v. Modrel*, 69 Mo. 152; *Whittemore v. Obear*, 58 Mo. 286; *Ayers v. Milroy*, 53 Mo. 576; *Smith v. Clark*, 54 Mo. 77; *Wolf v. Shaeffer*, 74 Mo. 154.

BURGESS, J.—This is a suit upon a negotiable promissory note for the sum of $8,500, dated on the ninth day of November, 1887, executed by defendants and payable to the order of plaintiff on or before twelve

months after its date.   The material allegations of the petition upon which the case was tried are as follows:

"Plaintiff, for her amended petition, leave of court having first been obtained, states that the said defendant, Geo. D. Ford, and the said defendant, John R. Towers, under and by the name of J. R. Towers, on November 9, 1887, made, executed and delivered to the plaintiff herein their certain promissory note, wherein they promised, for value received, to pay to the order of Julia G. Hurt, the plaintiff herein, on or before twelve months after date, the sum of eight thousand, five hundred dollars, at the National Bank of Kansas City, with interest from date thereof at the rate of ten per cent per annum, which said note is herewith filed and made a part of this petition.

"Plaintiff states that on November 14, 1888, the said defendants paid the sum of eight hundred and fifty dollars in full of interest to November 9, 1888, which said sum is credited upon the back of said note.   That on November 9, 1889, the said defendants paid the interest in full on said note to said date, and the same is credited upon said note.   That the plaintiff is now the owner and holder of said note."

The answer, omitting the formal parts, is as follows:

"Defendants, for their second amended answer to plaintiff's amended petition, admit they signed the note as set forth in plaintiff's petition; admit the same was delivered to plaintiff by one R. L. Yeager, as hereinafter set forth; admit defendants made payments as set forth in said petition; and for affirmative defenses to said note, defendants aver: *First.* That said note was signed by defendants, solely for and on account and in renewal of a certain promissory note, in words and figures following, viz.: 'Kansas City, Mo., May

9th, 1883. No. 21,950. Six months after date we promise to pay E. K. Thornton, cashier, or order, at the Bank of Kansas City, eight thousand and five hundred dollars, for value received, with interest from maturity at the rate of ten per cent per annum. $8,500, M. R. Hightower. T. R. Towers. Geo. D. Ford.' Defendants further aver that the said promissory note last mentioned was given under and by virtue of the following agreement and arrangement, to wit: The said M. R. Hightower, principal in said last mentioned note, made application to the plaintiff in the spring of 1883 for a loan of $8,500 to enable him to purchase a herd of cattle. Plaintiff not then having the ready sum to make said loan, and being desirous to assist said Hightower, who was her brother-in-law, requested said Hightower to procure the defendants to sign a note, with said Hightower as principal, to the Bank of Kansas City, for $8,500, and then and there requested, authorized and empowered said Hightower to state to the defendants, in order to induce them to become signers on said note, that she would take up said note when it should become due, and save defendants harmless from its payment. Defendants aver that, in pursuance of said request and authority, said Hightower requested defendants to sign said note, stating to them that plaintiff had requested him to say, for her, that if they would sign said note, and thus enable him to get the money from the bank, she would take up said note when due, and they should be held harmless from its payment. Defendants further aver that, by reason of such statements and agreement, and relying on the same, they were induced to and did sign said note with said Hightower, and that plaintiff, in pursuance of said agreement above stated and communicated to the defendants, came into possession of said note, the same being turned over to her as an asset of the estate of her

deceased husband, and became her property, and by her act in that behalf defendants became and were released from all liability on said note, and the same became as to them null and void, and plaintiff is now estopped from maintaining any action upon the note given in renewal thereof. Wherefore defendants aver that the note described in plaintiff's petition was and is wholly without consideration, and plaintiff ought not to have and maintain her action upon the same.

"For a *second defense*, defendants aver that the note described in plaintiff's petition was not only without consideration, as alleged in this answer, but that it is and was of no validity in law, in that it was placed in the hands of one R. L. Yeager, who was at the time the duly authorized agent of the plaintiff, in escrow, with the direction that it was to be delivered by him to plaintiff, and have effect as a valid obligation, only upon condition that one M. R. Hightower, for whose benefit the instrument was signed, should be procured also to sign the same, and said Yeager received said note charged with such directions and conditions. And defendants further aver that said Hightower was never procured to sign, and never did sign, said note, but without the knowledge of defendants, or either of them, the said Yeager delivered said note to the plaintiff; that at the time the note in suit was placed in the hands of said Yeager, said Yeager turned over to one Towers the note first above described, and said Towers turned the same over to the defendants; that the knowledge that said Hightower had not signed said note came to the defendants since the commencement of this suit, and the payments thereon were made without the knowledge that the note had been delivered to said plaintiff by said Yeager, contrary to said instructions given to him as aforesaid, and so defendants do herewith tender into court, for plaintiff, the promissory

note first above described, and pray judgment. For a *third defense*, defendants aver that the note described in plaintiff's petition was and is, not only without consideration, as first alleged in this answer, but that it was and is of no validity in law, for it was understood and agreed, between defendants and one M. R. Hightower, that said Hightower, for whose benefit the said notes were given, should also sign the note in suit, and in pursuance of said understanding said note, after it had been signed by the defendants, was handed by them to their agent, one Maj. Towers, with instructions for him to obtain said Hightower's signature upon the same before delivery thereof, but the said agent, not being able to find said Hightower, took the said note to the said R. L. Yeager, who at that time was the attorney and duly authorized agent of the plaintiff, and delivered the same to him, at the same time disclosing to said Yeager the instructions he had received from defendants as aforesaid, and the said Yeager, thus having notice of the instructions so given to defendants' agent, received said note charged with said notice, and without further authority from the defendants, or either of them, delivered said note to plaintiff without obtaining the said Hightower to sign the same. And defendants aver that said Hightower was never procured to sign, and never did sign, said note. Defendants further aver that at the time the note in suit was placed in the hands of said Yeager, said Yeager turned over to said Maj. Towers the note first described, and said Towers turned over the same to the defendants, who herewith tender into court, for plaintiff, the same. They further aver that the knowledge that said Hightower had not signed the note came to defendants since the commencement of this suit, and the payments thereon were made without the knowledge that said note had been delivered to plaintiff

by said Yeager contrary to the notice and instructions given him as aforesaid."

Plaintiff replied, denying all allegations in the answer except as to facts alleged in the petition.

Plaintiff asked and the court refused the following instructions:

"8. The jury are instructed that, although the witness Towers delivered the note in suit to witness Yeager in violation of the instruction of defendants, and although he communicated his instructions to witness Yeager at the time of such delivery, yet if the jury find and believe from the evidence that after said delivery, and after having knowledge that Hightower had not signed said note, defendants approved and adopted as their own the act of said Towers in making said delivery to said Yeager, the verdict should be for the plaintiff.

"10. The court instructs the jury that if they find from the evidence that the note in suit was delivered by W. A. Towers, as agent for the defendants, to R. L. Yeager, without imparting to him notice that he had been instructed by the defendants not to deliver the note to him until he had secured the name of Hightower thereon, then such delivery was valid and binding, and you must find for the plaintiff in the sum of $8,500, with interest thereon at the rate of ten per cent per annum from November 9, 1889; and this you must do, although you may believe that defendants may have instructed him not to deliver said note until he had secured the name of Hightower on said note."

The cause was tried with the aid of a jury, which returned a verdict for defendants. In due time, to wit, January 25, 1893, the plaintiff filed her motions for a new trial and in arrest of judgment. Before that motion was disposed of, to wit, March 29, 1893, plaintiff filed her motion for judgment *non obstante veredicto.*

On April 22, 1893, the court sustained the motion for a new trial upon the ground that it committed error in refusing instructions numbered 8 and 10 asked by plaintiff; and at the same time sustained her motion for a judgment on the pleadings, and rendered judgment in her favor for the amount due on the note and interest.    In due time defendants filed their motion for a new trial, which being overruled they saved their exceptions, and bring the case to this court by appeal.

M. R. Hightower, mentioned in the answer, is the brother-in-law of the plaintiff Julia G. Hurt, he having married her sister some time prior to the transactions out of which this litigation arose.    In 1883 it became necessary for Hightower to borrow $8,500, and he applied to the plaintiff, who is the widow of James Hurt, deceased, and whose estate was then in process of settlement, for a loan of that sum.    She did not have the money.    She authorized him, however, to say to defendants that if they would become his sureties so that he could borrow the money from some other source, she would take the note up at maturity.    Upon this representation defendants became Hightower's securities on a note to the Bank of Kansas City for the sum of $8,500, upon which he procured the money.    The note was dated May 9, 1883, due in six months after date.    When the note became due plaintiff applied to R. L. Yeager and James Lincoln, who were executors of the will of said James Hurt, to take up the note. The executors then paid the note, and indorsed it to her without recourse.

During the early part of November, 1883, it became necessary for Hightower to borrow the further sum of $8,000, which he obtained from the executors of the Hurt estate, giving as sureties George D. Ford, W. A. Towers and Charles Gudgell.    These two notes were turned over to the plaintiff by said executors as part of

her distributive share of that estate. . Interest was paid on both notes by Hightower until November 9, 1886, when he ceased to pay it any longer. Plaintiff then demanded the money on the notes or the payment of the interest due and new notes. One note for $8,000, dated November 9, 1887, and payable to plaintiff on or before twelve months after date, was drawn up and signed by George D. Ford, W. A. Towers and Charles Gudgell and delivered to R. L. Yeager, attorney for plaintiff. At the same time Yeager assigned and delivered to the makers of that note the old note for $8,000, signed by Hightower, Ford, Gudgell and W. A. Towers, dated November 11, 1893. At the same time the note in suit was drawn up, signed by the defendants, and delivered to R. L. Yeager, attorney for plaintiff under the following circumstances:

A note was executed by Hightower, Ford and Towers. Immediately after the note was executed, Ford concluded that it would be preferable to have the the note read "on or before," and Maj. Towers was deputed to take the note (signed by Hightower and the defendants) to Mr. Yeager (plaintiff's attorney) and inquire if another signed "on or before," would be accepted. Maj. Towers thereupon took the note signed by Hightower and the defendants to Yeager, and advised. him of Ford's request that the note should be changed to "on or before." Yeager acceded to that request, and returning the note to Major Towers, drew up another reading "on or before," for the parties to execute. Major Towers then returned with the new note for execution. In the meantime Hightower had disappeared, and when Ford and Towers executed the note they turned it over to Major Towers, saying to him to go out and find Hightower and get him to sign it, and not to deliver it to Yeager until he had obtained Hightower's signature. Major Towers, accompanied

by Charles Gudgell, started out in search of Hightower, and being unable to find him, Major Towers went to Yeager's office and stated to him that his instructions were to get Hightower's name on the note before delivery; that he had been hunting him and could not find him, and asked Yeager to take the note and get Hightower's name on it before delivering it to Mrs. Hurt. Yeager replied that he did not see what advantage it would be to have Hightower's name on the note as he was "busted," but Major Towers replied, that however that might be, his instructions were to obtain Hightower's name before delivery. Yeager accepted the note, and turned over to Major Towers the first note. Yeager did not get Hightower to sign the note. He turned it over to Mrs. Hurt without his signature.

Defendants testified that they did not know that Hightower's signature had not been obtained until after this suit had been brought, although they supposed it had been. Towers kept the old note and paid interest on the note in suit up to November 9, 1889. There was, however, evidence tending to show that in December, 1890, Towers knew that the name of Hightower was not on the note. Upon the execution and delivery of the notes all the interest due on the old notes was paid to plaintiff and the old note of which the one in suit is a renewal delivered to defendants.

The first question for consideration on this appeal is with respect to the action of the court in rendering judgment for plaintiff on what is called the motion of *non obstante veredicto*. Such a motion can only be sustained when it appears from the record that the allegations in the answer constitute no defense to the action (2 Elliott's Gen. Prac., sec. 997; Broom's Com. [4 Ed.], star page 209; 2 Tidd's Prac. 920; 1 Wilson's Reports, 65), and even then such a judgment can only be rendered in a clear case on the application of

plaintiff made after the *verdict*, and *before entry of judgment* on the verdict.    1 Freeman on Judgments [4 Ed.], sec. 7. Tidd, in stating the distinction between a judgment *non obstante veredicto* and a repleader, thus defines the former: "Where the plea is good in form, though not in fact, or, in other words, if it contain a defective title or ground of defense by which it is apparent to the court, upon the defendant's own showing, that in any way of putting it, he can have no merits, and the issue joined theron be found for him, there, as the awarding of a repleader could not mend the case, the court, for the sake of the plaintiff, will at once give judgment *non obstante veredicto*.    But where the defect is not so much in the title as in the manner of stating it, and the issue joined thereon is immaterial, so that the court know not for whom to give judgment, whether for the plaintiff or defendant, there, for their own sake, they will award a repleader.    A judgment, therefore, *non obstante veredicto* is always upon the merits, and never granted but in a very clear case."    2 Tidd's Practice, 922; *Lough v. Thornton*, 17 Minn. 253; *Bellows v. Shannon*, 2 Hill, 86; *Friendly v. Lee*, 20 Ore. 202.

In this case the verdict and judgment thereon were rendered on the twenty-first day of January, 1893, while the motion for judgment nowithstanding the verdict was not filed until March 29, 1893.    In *The State of Mississippi v. The Commercial Bank of Manchester*, 6 Smedes and Marshall, 218, the verdict and judgment were rendered on the twenty-first of November, 1845.    On the twenty-sixth of the same month the district attorney moved to set aside the judgment and for judgment *non obstante veredicto*, which was over-ruled. It was objected that the motion came too late after judgment was entered. The court said: "That, like a motion in arrest of judgment, it must precede the entry

of judgment, it being too late to arrest that which is already entered. This objection is quite technical, and yet it is in strict accordance with law. The objection is made, and there seems to be but one rule on the subject, and that is, that such a motion must be made immediately after the verdict, and before a judgment is rendered on the verdict.'' Moreover, when the motion was ruled on by the court and judgment *non obstante veredicto* rendered, the verdict had been set aside, so that it could not then have been maintained unless it be treated as a motion for judgment upon the pleadings, which under our system of practice may be made at any time after the pleadings are made up, and before verdict, and after verdict set aside. The motion contained all averments necessary in a motion for judgment on the pleadings, and treating it as a motion for that purpose, as we think it should be, the question arises as to the sufficiency of defendants' answer, and in passing upon this question we think the same rule should be applied as in the case of a motion *non obstante veredicto*. But the sufficiency of the answer must be determined by the record, and not by the evidence.

The answer admits that the note was delivered to one R. L. Yeager, as thereinafter stated, and that payments were made on the note as set forth in the petition. It alleges that Yeager was plaintiff's agent and attorney, and that the note was delivered to him with directions not to deliver it to plaintiff until Hightower's signature was obtained thereto, which was never done. It will thus be seen that the answer not only admits the delivery of the note in express terms, but it also admits the payment of interest on the note after its delivery, which is inconsistent with the contention that the note was never delivered. The question then is, could

the note be conditionally delivered to the plaintiff or to her agent, Yeager, for her?

*Massmann v. Holscher*, 49 Mo. 87, was a suit upon two promissory notes. One of the defendants answered admitting the signing of the notes, and their delivery to plaintiff to whom they were payable, and then alleged among other things that he signed and delivered the notes to plaintiff under an agreement and verbal understanding with him that the notes should be signed by one Hase, and if not so-signed that they should be considered as inoperative and void. Hase never signed the notes. The court held (we quote from *syllabus*) that: "A promissory note may be delivered to a stranger to be held by him as an escrow, to take effect on the happening of a future contingent event. But where it is held by the payee, the doctrine of escrow can not arise; and no fraud being charged, proof of an oral agreement by which the note was to become legally binding, not from its delivery according to its tenor, but on the happening of a certain contingency, is inadmissible. Such testimony varies the effect of a written contract."

So in *Henshaw v. Dutton*, 59 Mo. 139, it was expressly held that a note given upon contingencies not expressed upon its face was no valid defense to the note; that it could not be given to the payee as an escrow; that such delivery must be made to a third person, not the payee; that parol evidence is not admissible to vary the meaning of a note. This case was before this court again in 1878, and the same doctrine announced. *Henshaw v. Dutton*, 67 Mo. 666.

The same question was before this court in *Jones v. Shaw*, 67 Mo. 667, and it was again held that a note can not be treated as an escrow after having been delivered to the payee, but in order to have that effect the delivery must be to a third person. See, also, the

recent case of *Garvey v. Marks*, 134 Mo. 1. The same rule was announced in *Harwood v. Brown*, 23 Mo. App. 69, and in *Thompson, Payne & Co. v. Irwin et al.*, 42 Mo. App. 403.

The cases of *Carter v. McClintock*, 29 Mo. 464, and *State to use v. Potter*, 63 Mo. 212, are not, we think, in conflict with what has been said. In the *Carter* case the note was obtained by fraud, and it was held that, as delivery is necessary to the complete execution of a promissory note, if the payee obtain possession of it by fraud, he can not maintain an action thereon. A ruling, the correctness of which was fully recognized in *Henshaw v. Dutton, supra*. In speaking of the *Carter* case in *State to use v. Potter*, 63 Mo. 212, all that is said is that that case "simply declares that no delivery of a note occurs where the payee surreptitiously obtains possession thereof, and that he can not maintain an action thereon."

There is no allegation in the answer in the case in hand that the note sued on was obtained by fraud, hence the *Carter* case and the *Potter* case have no bearing upon this case. The petition alleges that the defendants made, executed and delivered the note to plaintiff, and its delivery is admitted by defendants in their answer, and whatever the law may be elsewhere, with respect to the delivery of such an instrument in escrow, it is well settled in this State that it can not be done by delivery to the obligee, but may be to a third party. It follows that the second and third counts of defendants' answer set up no defense to plaintiff's cause of action.

In the first count of the answer it is alleged that plaintiff requested, authorized and empowered Hightower to state to defendants, in order to induce them to become signers of the original note for $8,500, that she would take it up when due and save them harmless. That in pursuance of said directions Hightower made

the statements to them as directed by her, and that, relying upon said statements, they were induced to and did sign said note as the securities of Hightower. These allegations are denied by plaintiff in her replication to the answer. That the promise to save defendants harmless was simply an oral promise, appears from the answer and is undisputable; and that such a promise is within the statute of frauds (R. S. 1889, sec. 5186), was ruled by this court in *Bissig v. Britton*, 59 Mo. 206. While that case is severely criticised in 1 Reed on the Statute of Frauds, sec. 144, and note "u" to that section, it was concurred in by a full bench, and its correctness has never been questioned by this court in so far as we are advised. The question then is, as it appears upon the face of the answer that the contract was merely oral and within the statute, Was it necessary, in order for plaintiff to avail herself of the Statute of Frauds, that she should plead it specially, or was it raised by the general denial in the replication? The rule seems to be that when the contract is denied, it is not necessary to insist upon the statute as a bar; that it is as fully raised by a general denial as by special plea.

In *Wildbahn v. Robidoux*, 11 Mo. 660, it was said: "Where the defendant in his answer denies the contract, it is not necessary for him to insist upon the statute as a bar." *Hook v. Turner*, 22 Mo. 333. So it has been said it is as well raised by general denial, "as any other answer could raise it." *Wiswell v. Tefft*, 5 Kan. 263; Bliss on Pl., sec. 353; *Allen v. Richard*, 83 Mo. 55; *Hackett v. Watts*, 138 Mo. 502. In *Springer v. Kleinsorge*, 83 Mo. 156, in passing upon a similar question, it is said: "On such state of the pleadings the plaintiff, as said by RYLAND, J., in *Hook v. Turner*, supra, 'must produce legal evidence of the existence of the agreement, which can not be established by parol proof.' This logically results from the general denial

authorized by the Practice Act. The general denial puts in issue every fact included within the allegations of the petition, which the plaintiff must prove in order to a recovery. *Northrup v. Miss. V. Ins. Co.*, 47 Mo. 435-444. In the action of replevin and of ejectment, under a general denial, the defendant may show that the claim of plaintiff is fraudulent and bad, and thus avoid the plaintiff's title. *Greenway v. James*, 34 Mo. 328; *Bobb v. Woodward*, 42 Mo. 488; 25 Wis. 35, 36; 3 Bibb. 216. The answer in this case contains, first, a general denial of the allegations of the petition. It is true, it pleads other matters of special defense, but the new matter is in nowise inconsistent, in contemplation of the Practice Act, with the general denial. They can well exist together in point of fact and law. *Nelson v. Brodhack*, 44 Mo. 596. This construction of the pleading in this case is in nowise in conflict with the cases of *Gardner v. Armstrong*, 31 Mo. 535; *Rabsuhl v. Lack*, 35 Mo. 316, and *Graff v. Foster*, 67 Mo. 512. . . . . . . In the first case cited the court simply holds that the petition was not demurrable for failure to recite that the contract was in writing. That was matter of defense to be raised by the answer. It does not say that the question would not be well raised, under our present Practice Act, by the general issue. So in the case in 35 Mo. the answer admitted the indebtedness without pleading the statute. And in *Graff v. Foster*, an examination will show that the answer did not deny the contract, but merely put in issue the indebtedness. To deny the indebtedness is no denial of the existence of the contract out of which the petition avers the indebtedness arose. *Engler v. Bate*, 19 Mo. 543."

The effect of the denial by plaintiff in her replication to defendants' answer of all allegations therein except as to the facts alleged in the petition, was to deny that she ever promised defendants or agreed with them

that if they would become the sureties of Hightower she would save them harmless; and as the alleged contract was merely oral as shown by the answer, the plea of the statute was. as well raised by the denial as it would have been by special plea.   The contract, if made, was clearly within the Statute of Frauds and no bar to plaintiff's action.

Upon the facts disclosed by the record, instruction numbered 8 asked by plaintiff presented to the jury the question of ratification which was raised by the pleadings and which the evidence tended to prove, and in its refusal error was committed which justified the court in setting aside the verdict.

As it is manifest from the record that defendants have no defense which could be made available by repleading, the judgment is affirmed.

All concur except BARCLAY, C. J., and MACFARLANE, J., who dissent.

BARCLAY, C. J. (*dissenting*).—When this cause was in the first division an opinion was filed (36 S. W. Rep. 671) which expresses our idea of the case.   In view of the full statement of facts in the learned opinion of the majority of the Court *in banc*, some parts of the divisional opinion need not now be repeated.

1.   A number of minor points in regard to the procedure in the circuit court have been raised.   We shall not touch upon them all, but discuss only those which seem to be finally material.

As plaintiff had possession of the note and filed it, the burden of proof at the trial was upon defendants to establish some one of their defenses.

Though the code of procedure makes no mention of a motion for judgment notwithstanding the verdict, yet it obviously may be resorted to on a proper occasion.   If neither the defendants' evidence at the trial,

nor their pleadings, disclosed any defense to the cause of action stated by plaintiff, it would not serve the ends of justice to grant a new trial, there being really nothing to try, according to the final opinion of the trial judge. In that event the court might properly give its view of the case on a motion such as that plaintiff filed (waiving now the question whether or not it was offered in due season). The filing occurred more than four days after the verdict, and the motion is attacked on that account. But as we consider it untenable on its merits, we forbear ruling on the question of its timeliness.

We also consider it immaterial to decide whether a motion for judgment, notwithstanding the verdict, is available where a good affirmative defense appears in the answer, but is not supported by evidence tending to discharge the burden of proof as to that defense.

We entertain no doubt that the testimony offered by defendants tended to prove at least one of the defenses set up in their answer. But as we hold that the judgment should be reversed for a new trial, we prefer to refrain from any comment on the probative effect or weight of the evidence, further than the general statement just made.

2. The important and decisive question in the case, raised by the answer, is whether its allegations avoid the *prima facie* showing of the petition.

The gist of the plaintiff's contention is that the answer admits the delivery of the note, and that the facts alleged in connection therewith are legally insufficient to avoid the liability created by the delivery.

The defendants repel that contention with vigor, and the discussion which that issue has elicited has been both entertaining and useful to the court.

It will be noticed that the answer does not precisely admit an absolute delivery. It states that the

note "was delivered to plaintiff by one R. L. Yeager as hereinafter set forth." The answer then proceeds to set forth a conditional delivery to Mr. Yeager, and a failure of the condition, the facts of which are fully given.

To simplify the case, as now presented, we shall assume that the conditional delivery was made to plaintiff's agent (or in effect to plaintiff herself) though there is some question as to whether the facts should be so interpreted. We consider that view of them, however, most favorable to plaintiff, and we will endeavor to apply upon that groundwork the rule of law which we think controls this branch of the case.

Plaintiff's learned counsel argue that no condition could be connected with the delivery of the paper to plaintiff's attorney. They assert that a note can not be conditionally delivered to the payee or to the payee's agent.

The principles which govern that subject are by no means universally settled. On the contrary, we find not only conflicting opinions thereon in other states, but a want of harmony in the decisions in Missouri.

The proposition contended for by plaintiff finds support in rulings (or at least remarks) in *Massman v. Holscher* (1871) 49 Mo. 87; *Henshaw v. Dutton* (1875) 59 Mo. 139, and (1878) 67 Mo. 666; and *Jones v. Shaw* (1878) 67 Mo. 667. While in *Carter v. McClintock* (1860) 29 Mo. 464, it was distinctly held that mere manual delivery of a note to the payee created no liability where the intent to deliver was wanting. In that case the doctrine that a delivery of such paper may be conditional is conceded and acted upon.

That decision was cited in *State to use of Bothrick v. Potter* (1876) 63 Mo. 212, a case which appears to assume the correctness of the proposition that delivery

of a document may be conditional as between immediate parties. That judgment, however, asserts that the condition does not bind third persons who, without notice, acquire rights under the document, delivered in violation of the condition, in such circumstances as that case describes. That ruling has been often approved in subsequent cases, and is a leading one on the topic which it treats.

The analogy afforded by the Missouri rulings on conditional delivery of chattels (before the enactment of section 5180, R. S. 1889) tends to sustain the doctrine announced in *Carter v. McClintock* (1860) 29 Mo. 464, as to controversies between contiguous parties to notes. See *Dannefelser v. Weigel* (1858) 27 Mo. 45; *Little v. Page* (1869) 44 Mo. 412; *Oester v. Sitlington* (1893) 115 Mo. 247 (21 S. W. Rep. 820).

The principle of the *Carter* case was also recognized in *State ex rel. Moore v. Sandusky* (1870) 46 Mo. 377, followed by the second division in *Gay v. Murphy* (1896) 134 Mo. 98 (34 S. W. Rep. 1091).

Defendants' answer asserts that the note was to be signed by Mr. Hightower before final delivery, and that Mr. Yeager had full notice of that fact on receiving the paper as custodian.

The true question in such cases is as to the intent of the parties touching the delivery.

If the instrument, though complete in form, is incomplete in fact for want of a further signature to be given it, and in that state (pending the last signature) it is placed in possession of the payee (having full knowledge of its incompleteness) with the mutual understanding that the missing signature is to be added, before the note is to be regarded as delivered, the payee can not afterward treat it as delivered, without more, even at law, and still less in equity. *Jordan v. Loftin* (1848) 13 Ala. 547. To treat it as delivered in its in-

complete condition would be a fraud of the simplest and most obvious character.

This proposition does not infringe upon the valuable and general rule that protects writings from change by oral evidence. It is not even an exception to that rule. Until delivery is complete, the writing does not become operative as a contract between the parties. *Rogers v. Carey* (1871) 47 Mo. 232. Bare possession of a document can not be made a substitute for its delivery, which involves the expression (in some form) of an executed purpose to deliver. *Huey v. Huey* (1877) 65 Mo. 689; *Scott v. Scott* (1888) 95 Mo. 300 (8 S. W. Rep. 161).

We are writing only of a case in which the issue arises between the immediate parties to such a transaction. That is the case in hand. We shall try to confine our comments within the field of legal view afforded by its record.

Possession of a note by the payee may (unexplained) be competent evidence of its delivery. But the normal inference from such possession may be counteracted by proof that no delivery was intended in advance of some event which has not happened. Proof of such a state of facts does not contradict the instrument; it only shows that the last act necessary to give it life as a contract has not taken place. The paper remains but a paper while the intent essential to put legal vigor into its form is wanting.

It is not needful to inquire whether possession of a note by the payee, pending another signature (as alleged in the answer), constitutes a holding in escrow. The classification of the act is unimportant as compared with its legal substance. Whatever name the act may bear can not change the principles regulating its effect. We prefer at this time to avoid any attempt to define an "escrow."

It appears to us that facts are stated in the answer which amount to a defense to the note in suit for want of a full and legal delivery of it.

We forbear any further discussion of the subject in view of the thorough treatment it has recently had in the Supreme Court of the United States in a learned judgment which we fully accept. *Burke v. Dulaney* (1894) 153 U. S. 234 (since approved in *Michels v. Olmstead* (1895) 157 U. S. 198).

In addition to the valuable precedents cited in the *Burke* decision, we refer to a few others having a tendency to support the result we announce. *Bell v. Ingestre* (1848) 12 Ad. & E.. (N. S.) 317; *Sweet v. Stevens* (1863) 7 R. I. 375; *Michels v. Olmstead* (1882) 14 Fed. Rep. 219; *Westman v. Krumweide* (1883) 30 Minn. 313 (15 N. W. Rep. 255); *Bank v. Luckow* (1887) 37 Minn. 542 (35 N. W. Rep. 434); *Bank v. Bornman* (1888) 124 Ill. 200 (16 N. E. Rep. 210).

The ruling in *Burke v. Dulaney* is sustained by the following standard text books, besides those cited in that case: 2 Am. and Eng. Ency. Law [1 Ed.], p. 343; Browne, Parol Ev. [1 Ed.], sec. 68; Byles on Bills [13 Ed.], *p. 103; 1 Greenl. Ev. [15 Ed.], sec. 284; Leake, Contracts [1 Ed.], p. 187; Story, Notes [7 Thorndike's Ed.], p. 67, note; Taylor, Ev. [8 Ed.], sec. 1037; Tiedeman, Com. Paper [1 Ed.], sec. 34d.

Whatever is said or intimated to the contrary in the *Massman, Henshaw* and *Jones* cases should not be regarded as any longer authoritative.

3. Plaintiff insists that the first defense in the answer is insufficient because the statute of frauds defeats it. Whether that statute (if available to plaintiff) would have that effect, is a proposition we do not take up. It is involved in some doubt, as the discussion in a modern text book indicates. Reed, Stat. Frauds [1 Ed.], sec. 144. But it plainly appears from

Hurt v. Ford.

the answer in this case that the agreement (on which the statute is supposed to bear) was oral, and the statute is not set up in the reply as a defense to it. Hence that statute can not be resorted to as a barrier to prevent the enforcement of the promise. *Gardner v. Armstrong* (1862) 31 Mo. 535; *Gordon v. Madden* (1884) 82 Mo. 193.

4. But the order granting a new trial to plaintiff was plainly right. The plaintiff's eighth refused request for an instruction properly submitted the issue of a ratification of the alleged unauthorized delivery of the note in the form it now has. We do not see that the refusal of that instruction was harmless, and are hence bound to assume that the trial court regarded it as prejudicial to plaintiff, since the verdict was set aside on that account. R. S. 1889, secs. 2240, 2100. *Bunyan v. Railroad* (1895) 127 Mo. 12 (29 S. W. Rep. 842).

Notwithstanding the fact that the note may have been invalid between the first parties (for want of delivery without the signature of Hightower), it was competent for those who did sign it to make the delivery their own by duly ratifying it, as they might have made the delivery unconditional in the first place. *Leaf v. Gibbs* (1830) 4 C. & P. 466; *Perry v. Patterson* (1844) 5 Humph. 133; *Robbins v. Phillips* (1878) 68 Mo. 100.

We think the judgment should be reversed and the cause remanded for new trial. We respectfully dissent from any other judgment here. MACFARLANE, J., joins in this opinion.