## HENRY W. BLODGETT v. HENRY C. KOENIG, Appellant.

### In Banc, May 21, 1926.

1. **NON-OBSTANTE VEREDICTO: Available only to Plaintiff.** A motion for judgment *non-obstante veredicto* is not available to defendant; it is available only to plaintiff, and can be sustained only

Blodgett v. Koenig.

when it appears from the record that the allegations in the answer constitute no defense to the action, and even then a judgment for plaintiff can be rendered only in a clear case on the application of plaintiff made after verdict and before entry of judgment on the verdict. Defendant's remedy in case of excessive verdict is by motion in arrest.

2. **ACTION: Upon Express Contract: Quantum Meruit: Verdict: Less than Agreed Amount.** Plaintiff sued on an express contract, alleging that defendant agreed to pay him fifteen thousand dollars for defending him in a criminal prosecution, having paid him one thousand dollars as a retainer fee, and asking judgment for fourteen thousand dollars and interest. The answer was a general denial, and defendant asked and received an instruction directing the jury that, if they found that he did not promise and agree to pay plaintiff fifteen thousand dollars as attorney's fee, to return a verdict for defendant. The jury by their verdict found "in favor of plaintiff on the issues herein joined" in the sum of seven thousand dollars, plus interest. *Held*, that defendant's contention that plaintiff sued on an express contract and was allowed to recover on a *quantum meruit* cannot be allowed, but the verdict sustained plaintiff's allegation that a contract to pay him fifteen thousand dollars was made, and he recovered on said contract, and might have moved for judgment *non-obstante veredicto* for the full fifteen thousand dollars and interest, and defendant cannot complain that he accepted the verdict for a less sum.

3. ———: ———: ———: ———: **Instructions: Just and Fair Contract.** The plaintiff having sued on an express contract, and the answer being a general denial, and instructions, both for plaintiff and defendant, having conditioned plaintiff's right to recover on the existence of said contract, and the jury by their verdict having found "in favor of the plaintiff upon the issues herein joined," further instructions asked by and given for defendant, telling the jury that they must find that the contract "was fair and just, and that plaintiff took no unfair advantage of the defendant, and that he did not contract for a greater compensation than his services were reasonably worth," and that "if the relationship of attorney and client had already existed at the time the contract, if any, was made" then "before you can find in favor of plaintiff, you must find that the contract was fair and equitable and that defendant acted freely and understandingly with reference thereto, and that the amount agreed to be paid is the reasonable value of the services rendered," placed upon the plaintiff a greater duty than the law requires, and were responsible for a verdict for a less sum than the amount agreed to be paid, but they were errors in defendant's favor, and therefore errors of which he cannot complain.

Blodgett v. Koenig.

*Held*, by WALKER, J., dissenting, that the petition did not count upon *quantum meruit* and the case was not tried or submitted on any such theory, and defendant's motion for judgment *non obstante veredicto* was not an acceptance of or an election by him to stand upon the verdict, and was not inconsistent with a motion for a new trial thereafter filed, alleging that the fee claimed was excessive, but that the verdict of the jury sustained defendant's contention that the fee claimed was excessive, and the motions for a new trial and in arrest should have been sustained.

Corpus Juris-Cyc. References: Attorney and Client, 6 C. J., Section 350, p. 759, n. 57; Section 360, p. 765, n. 61. Judgments, 33 C. J., Section 112, p. 1179, n. 14, 15; p. 1181, n. 28.

Appeal from Circuit Court of City of St. Louis.—*Hon. H. A. Hamilton*, Judge.

AFFIRMED.

*Buder & Buder* and *E. E. Schowengerdt* for appellant.

(1) Under the pleadings and instructions the plaintiff was entitled to the amount named in his alleged contract or nothing. No *quantum meruit* cause of action was pleaded. The verdict of the jury for only one-half of the amount mentioned in the petition and instructions was contrary to and in conflict with the pleadings and with the instructions. The verdict and judgment are not responsive to the pleadings or to the instructions, and the variance is fatal. Under the pleadings and instructions the verdict is self-contradictory and is self-destructive. Martin v. Barnett, 208 S. W. 278; Real Estate Co., v. Investment Co., 150 Mo. App. 626; Cole v. Armour, 154 Mo. 333; Witty v. Saling, 171 Mo. App. 574; Mills v. Met. Railway, 221 S. W. 5; Morey v. Feltz, 187 Mo. App. 650; St. Paul Machinery Co. v. Gaus, 200 S. W. 89; Laclede Const. Co. v. Tudor Iron Works, 169 Mo. 137; Bay v. Wank, 215 Mo. App. 153. (2) When a party declares on a special or express contract, he cannot recover judg-

ment as on a *quantum meruit*. If he desires to sue or recover on a *quantum meruit* theory he should have filed pleadings appropriate for such remedy. Under no circumstances or conditions can there be a recovery on *quantum meruit* where the sole cause of an action is based on an express contract. Shoemaker v. Johnson, 200 Mo. App. 209; Stanley v. Whitlow, 181 Mo. App. 461; Michael v. Kennedy, 166 Mo. App. 466; Quigley v. King, 182 Mo. App. 196; Gillham v. Met. St. Ry. Co., 282 Mo. 118; Lewis v. Slack, 27 Mo. App. 119; Roll v. Inglish, 179 S. W. 771; Davis v. Drew, 132 Mo. App. 503, 144 Mo. App. 174; Jenkins v. Clopton, 141 Mo. App. 74; Law Reporting Co. v. Whitaker, 254 S. W. 715; City of Salisbury v. Const. Co., 261 S. W. 361; Hutchinson v. Swope, 256 S. W. 136. (3) The alleged contract for fifteen thousand dollars attorney's fees was made after the relationship of attorney and client had commenced, and while it was in existence. It, therefore, became plaintiff's duty to show and affirmatively establish that the alleged contract was reasonable and just and that the amount of fifteen thousand dollars mentioned was not in excess of the reasonable value of his services. Failure by plaintiff to establish that the contract was fair and just and that fifteen thousand dollars was a reasonable fee defeats his recovery on the contract. Morton v. Forsee, 249 Mo. 409; Thompson v. Stearns, 197 Mo. App. 344; Barthels v. Garrels, 206 Mo. App. 199; French v. Cunningham, 149 Ind. 632; Whitehead v. Kennedy, 69 N. Y. 466; Burnham v. Heselton, 82 Me. 500; 4 Cyc. 960; White v. Tolliver, 110 Ala. 300; Rose v. Mynatt, 7 Yerg. (Tenn.) 30; Thomas v. Turner, 87 Va. 1; Brock v. Barnes, 40 Barb. 521; Nusan v. Payne, 2 Ves. 200; Dickson v. Bradford, 59 Ala. 581; Waterbury v. City, 68 Tex. 565; Bolton v. Daily, 48 Iowa, 348; State v. Standard Oil Co., 194 Mo. 124; Morrow v. Pike Co., 189 Mo. 610. (4) Plaintiff's petition, showing on its face that the relation of attorney and client existed at the time the alleged contract was made, and the general denial, raised the issues of contract or no contract. The

burden thereupon fell upon the plaintiff to affirmatively establish that the contract was fair, equitable and just, and that the amount of $15,000 was reasonable. Unless such facts were affirmatively established, and found to exist by the jury, there could be no contract. Plaintiff at the trial assumed this burden and attempted to prove such facts. The verdict of the jury for $7,000, plus interest, conclusively established that $15,000 was not reasonable. The verdict amounts to a finding that there was no contract. Consequently there can be no judgment founded thereon. Authorities cited above. (5) Under the pleadings and the instructions before the jury could return a verdict for plaintiff they were required to find that the alleged contract sued on was fair, equitable and just, and that $15,000 was reasonable. The verdict for $7,000 plus interest, conclusively establishes that the jury found that $15,000 was not reasonable. Therefore, one of the essential conditions and prerequisites for the validity of the alleged contract was found not to exist, and, therefore, there was no contract. There could be no judgment founded thereon. The verdict was consequently for the wrong party. Authorities cited above.

*Abbott, Fauntleroy, Cullen & Edwards* for respondent.

(1) When defendant filed his motion for judgment, upon the verdict as rendered, claiming, in effect, that it was a verdict which entitled defendant to a judgment, such motion was an acceptance of that verdict, as being satisfactory to him, and in seeking, by such motion, for a judgment, upon the verdict, defendant estopped himself, after that motion was overruled, from turning his face around, and, then, claiming that the verdict was wrong, as being in teeth of, and contrary to, the instructions of the court, which told the jury, as defendant claims, that the verdict must be, either, for the full sum sued for by plaintiff, or for nothing. Nixon v. Downey & Wolverton, 54 Iowa, 169. (2) There is no issue made,

or suggestion to be found, in defendant's answer, that the agreement which plaintiff alleges he entered into with defendant was made at any time while Koenig was a client of Blodgett. To the contrary, Koenig denies that he ever employed Blodgett; he denies that he ever became the client of Blodgett, and he impudently and, mendaciously (as the jury found to be the fact) denies that Blodgett ever entered into his service, or ever performed any service for him, or ever took any part, or had any participation in the trial of his case. In order for Koenig to take advantage of the presumption that Blodgett was dishonest when he entered into the service of defendant, as defendant seeks to now avail himself of, and before the burden was on Blodgett to prove the fairness of the agreement, it was necessary for Koenig to put himself under the protection of that rule and to allege, by proper averments in his answer, such a state of facts as would show that he was acting under the overwhelming shadow of Blodgett's relationship with him, and whereby Blodgett not only had the opportunity to, but actually did, get from Koenig a corrupt, degrading, dishonest, overreaching and crooked agreement. A party cannot deny the existence of the relationship out of which a rule grows and, at the same time take the benefit of the rule, no matter how gracious that rule may be. The reason for the rule must exist, else the rule ceases. Klebe Distilling Co., 207 Mo. 487; Hazzard v. Walker, 132 Mo. App. 465; United States v. Kirby, 7 Wall. 485; Williams v. Hays, 157 N. Y. 541, 43 L. R. A. 253; Tripps v. Nobbs, 136 N. C. 99, 67 L. R. A. 449.

RAILEY, C.—Plaintiff, a duly licensed attorney at law, on May 8, 1919, sued the defendant to recover $14,000, the balance due on an attorney's fee, with interest from November 12, 1918. The cause was tried by a jury, resulting in a verdict and judgment for plaintiff, on June 10, 1922, for $7,000 and interest, $1,545.25, aggregating $8,545.25. On appeal to the St. Louis Court of Appeals, that court, of its own motion, transferred the

cause to this court because the amount in dispute, exclusive of costs, exceeds the sum of $7,500. [Sec. 2418, R. S. 1919.]

The Federal grand jury at the city of St. Louis, in January, 1918, returned an indictment against the defendant, charging him with sundry violations of an Act of Congress, known as the Espionage Act, a violation of which was punishable by a fine not exceeding $10,000, or by imprisonment for a term not exceeding twenty years, or by both such fine and imprisonment. The defendant retained Mr. Frumberg, an attorney at law, for his defense. A demurrer to the indictment was sustained, and a second indictment was found against the defendant early in June, 1918. At the defendant's suggestion, Mr. Frumberg retained the plaintiff as counsel for the defendant, because of his experience as United States District Attorney, and of his high standing in his profession, paying him a retainer of $1,000 and assuring him that the defendant would compensate him liberally in the event of the defendant's acquittal. Blodgett from that time on took the lead in the defense. A demurrer to the second indictment was sustained. A third indictment, containing ten counts, was returned on October 11, 1918.

The first time Blodgett saw the defendant to know him was at Frumberg's office on Sunday, October 20, 1918. Koenig there told plaintiff he had agreed to pay Frumberg $25,000 in the event of his acquittal and that he wanted plaintiff to come into the case. He said money was no object to him; that he was worth a million dollars, and would kill himself if he was convicted. They discussed the case, and Koenig said he would take up the matter of plaintiff's fee in a few days. On October 28th Koenig agreed to pay plaintiff $15,000, if acquitted. This proposition was accepted by plaintiff. Blodgett told the defendant that Frumberg had paid him $1,000 as a retainer. Koenig said that was all right; that he had instructed Frumberg to pay him that sum as a retainer. The trial lasted four days, and at the conclusion

of the case for the prosecution the court sustained a demurrer to the evidence and directed the jury to return a verdict of not guilty, and the defendant was discharged.

The evidence for the plaintiff is that from the time he accepted the retainer he gave his time exclusively for a period of one hundred days to the preparation for and the trial of the case and that $15,000 was a reasonable fee. Nine prominent attorneys testified that a reasonable fee for plaintiff's services would be from $15,000 to $20,000. This will suffice for the case made by the plaintiff.

The defendant testified that he employed Mr. Frumberg and paid him $7,500 for defending him against the charges in the indictment; that Frumberg employed Blodgett on his own suggestion and agreed to pay him out of his own pocket; that he, the defendant, did not employ plaintiff or agree to pay him a dollar, and that plaintiff's testimony in that respect was a lie. One attorney testified that $5,000 would be a reasonable fee for plaintiff's services; another that $8,000 would be a reasonable fee.

The court gave the following instruction for the plaintiff:

"1. If the jury find from the evidence that on or about October 28, 1918, the defendant was under indictment in the United States Court for the Eastern Division of the Eastern District of Missouri, charged by the United States Government with certain crimes against the laws of the United States, and that defendant Koenig employed plaintiff as a lawyer to assist in his defense against said criminal charges, and that defendant did freely and voluntarily, and without any fraud or unfairness on the part of plaintiff having been practiced upon him, knowingly and fairly agree with plaintiff that he would pay plaintiff fifteen thousand dollars for his services as an attorney in assisting in defendant's defense upon the trial of such criminal charges if the trial thereof should result in defendant's dis-

charge and acquittal, and that plaintiff did then and there accept such employment, and did assist in the trial of defendant upon said criminal charges, and did in all things perform all necessary acts on plaintiff's part, as one of the attorneys of defendant, in defending defendant against said criminal charges, and that at the trial thereof defendant was acquitted and discharged from said criminal charges, then your verdict should be for plaintiff in the sum of fourteen thousand dollars, with six per cent interest thereon per annum from the date of the discharge and acquittal of defendant, which was November 12, 1918.''

The court also gave the following instructions for the defendant:

''2.    The court instructs the jury that if you find and believe from the evidence that the defendant Koenig did not promise or agree to pay to the plaintiff the sum of fifteen thousand dollars, as attorney's fees, then your verdict must be for the defendant.

''3.    The court instructs the jury that if you find and believe from the evidence that the relation of attorney and client existed between the plaintiff and defendant at the time of the execution of the contract, if any, sued on, then you are advised that the burden of proof is on the plaintiff to show by the greater weight or preponderance of the evidence that the contract, if any, was fair and just, and that the plaintiff took no unfair advantage of the defendant, and that he did not contract for a greater compensation than his services were reasonably worth with reference to the character of the controversy, the skill and labor required, the responsibility imposed, the standing and ability of the attorney, together with the results attained, and defendant's ability to pay.

''4.    The court instructs the jury that if the relationship of attorney and client had already been existing or established at the time that the contract, if any, in question was made, that then and in that event before you can find in favor of the plaintiff and against the de-

fendant in this case you must find and believe from the evidence, first, that the contract, if any, was fair and equitable and that the defendant acted freely and understandingly with reference thereto, and secondly, that the amount agreed to be paid is the reasonable value of the services rendered.

"5.   The jury are instructed that the opinions of the parties who testified as experts are merely advisory and not binding upon the jury, and the jury should accord to them such weight as they believe, from all the facts and circumstances in evidence, the same are entitled to receive.

"6.   The court instructs the jury that the charges preferred against the defendant Koenig in the indictment read in evidence are no proof of the truth thereof, and that the defendant in this case, against whom the indictment was found, has been acquitted of the crime charged therein."

The petition, omitting formal parts, alleges, in substance, that defendant was indicted by the Federal grand jury on October 11, 1918; that plaintiff was employed by defendant in connection with the law firm of Frumberg & Russell to defend him and received a retainer of $1,000, and that on October 28, 1918, the defendant undertook and agreed to pay plaintiff a fee of $15,000 for his services in said cause in the event of his acquittal; that plaintiff accepted said employment and took up the defense of the defendant in connection with said other attorneys and prepared for the trial, which began on November 8th and closed on November 12th; that he fully performed his said agreement and undertaking, and that through the efforts of himself and said associate attorneys the defendant was acquitted and discharged at said trial; that plaintiff demanded payment of his fee and same has been refused.

The answer is a general denial.

I.   When the verdict was returned the defendant filed a motion for judgment *non obstante.* Learned coun-

sel contend that, it being conceded that the fiduciary
relation of attorney and client existed at
the time the alleged contract between the
plaintiff and the defendant was entered in-

**Non Obstante Veredicto.**

to, the burden was on the plaintiff to affirmatively es-
tablish that the contract was fair, equitable and just,
and that the fee agreed to be paid was reasonable and not
excessive; that unless such facts were found to exist,
there could be no recovery on the contract, and that the
verdict of the jury for $7,000 and interest conclusively
establishes that $15,000 was not a reasonable fee, and is
equivalent to a finding that the alleged contract was not
binding or obligatory on the defendant; hence the court
erred in overruling defendant's motion for judgment
*non obstante veredicto.*

The difficulty with this contention is that this char-
acter of motion is available only to the plaintiff, and not
the defendant; the remedy for the defendant in such or
similar circumstances being a motion in arrest of judg-
ment. ''Such a motion can only be sustained when it ap-
pears from the record that the allegations in the an-
swer constitute no defense to the action [citing authori-
ties] and even then such a judgment can only be ren-
dered in a clear case on the application of plaintiff made
after verdict and before entry of judgment on the ver-
dict.'' [Hurt v. Ford, 142 Mo. 283, 296, 44 S. W. 228.
See King v. Grocer Co., 188 Mo. App. 235, 238, 175 S. W.
77; 3 Bouvier's Law Dict. (Rawle's Third Rev.) 2355;
1 Freeman on Judgments (5 Ed.) 810, and 1 Black on
Judgments (2 Ed.) 816.] There is no merit in this con-
tention.

II. It is contended by defendant that plaintiff, hav-
ing sued on an express contract, could not recover on a
*quantum meruit,* and hence the court
erred in overruling the motion in arrest
and entering judgment on the verdict.
Let it be conceded, for the purposes of
the case, that plaintiff sued on an express contract for

**Express Contract: Quantum Meruit.**

$14,000, after having received a retainer fee of $1,000. The answer is a general denial.

Instruction 2, given in behalf of defendant, reads as follows: "The court instructs the jury that if you find and believe from the evidence that the defendant Koenig did not promise or agree to pay to the plaintiff the sum of fifteen thousand dollars, as attorney's fees, then your verdict must be for the defendant."

The verdict returned, reads as follows: "We, the jury in the above cause, find in favor of the plaintiff on the issues herein joined, and assess plaintiff's damages at the sum of seven thousand dollars with interest thereon at six per cent per annum from November 12, 1918, to June 10, 1922, amounting to $1,545.23, aggregating $8,545.23."

What were the issues joined? Clearly an assertion by plaintiff that defendant owed him $15,000 for legal services rendered, with a general denial on the part of defendant. The jury were plainly told in defendant's Instruction 2, supra, that if defendant did not agree to pay plaintiff the $15,000 they must find for defendant. The jury, having found this issue in favor of plaintiff, thereby sustained the contention of the latter, that a contract was made for the payment of $15,000. We therefore hold that plaintiff recovered on the contract as alleged, although the jury failed to give him the full amount of compensation shown by his contract, and nine witnesses who testified as to the reasonableness of same. The plaintiff might have moved for judgment *non obstante* for the full contract price, but having elected to accept the verdict of the jury, how has the defendant been injured, when he is let off with less than the amount contracted for, as shown by the verdict of the jury in finding the issues for plaintiff?

III. It is manifest from reading Instructions 3 and 4, given in behalf of defendant, that the court imposed upon plaintiff a greater duty in making his case than the law requires on such facts as are disclosed by the

record herein. These instructions, in our opinion, are largely responsible for the compromised verdict in this case, as the jury evidently thought, after hearing the experts on both sides as to the value of the services rendered, that they had the legal right to determine for themselves, the amount which they should allow plaintiff. The court, in the giving of these instructions three and four, seems to have been of the impression that they were necessary and proper under the ruling made by Judge WALKER in Morton v. Forsee, 249 Mo. 409, and following, where the record recites, page 426: ''That Pitt was the attorney and business agent of the defendant for some years prior to this contract, and was at the time under contract with her as her legal adviser, there is no question. Does this of itself preclude the admission of the contract in evidence, until such evidence is introduced by plaintiff as will rebut such presumption?''

Judge WALKER, on the facts above stated, answered in the affirmative, and we think his ruling is sustained by the weight of authority, based on the evidence before him. On the record before us, the defendant, in his answer, denied that he ever employed plaintiff as an attorney. He testified at the trial, that he never employed plaintiff as counsel in his litigation and that he never had twenty-five words of conversation with plaintiff in his life. According to his own pleading and evidence, there was no confidential relation existing between plaintiff and defendant which called upon the former to prove that no unfair advantage was taken of the latter. In the Morton-Forsee case, the answer pleaded the facts showing the confidential relation, which stood admitted at the trial.

The evidence here tends to show that plaintiff and defendant were dealing at arms length with each other; that plaintiff was not hired on account of any confidential relations which he sustained toward defendant, but solely on account of the experience which he had had, as District Attorney in the United States court. As

shown by the record, the defendant was overwhelmed with litigation of a serious nature, and employed plaintiff on account of his experience as a practitioner in the Federal court, to assist Frumberg in the defense of these criminal cases. He was successfully defended by these attorneys, and, as we think the evidence shows, agreed to pay plaintiff $15,000 for his services. The jury found that defendant made the agreement set out in petition. He does not claim, if the agreement was made, that the verdict of the jury is excessive. The plaintiff acquiesced in said verdict, and the defendant, having brought about such finding by his instructions three and four, which enabled him to get off with less than he owed plaintiff, is in no position to complain of the verdict.

The record discloses that nine prominent attorneys in St. Louis testified, in behalf of plaintiff, that a reasonable fee for the services rendered would be from $15,000 to $20,000. One witness for defendant fixed the compensation at $5,000 and another at $8,000. The jury found the issues as to the contract for $15,000 in favor of plaintiff. Should the case be reversed because the jury let the defendant off with less than half the amount plaintiff was entitled to recover when the latter has acquiesced in the verdict as returned?

We have examined the other matters presented, and find that the only errors, if any, committed, were against the respondent. The judgment below was for the right party, and is accordingly affirmed.

PER CURIAM.—This case coming into Court in Banc, the foregoing opinion of RAILEY, C., in Division Two, is adopted as the decision of the court. *Blair, C. J., White, Atwood, Graves* and *Otto, JJ.,* concur; *Ragland, J.,* dissents; *Walker, J.,* dissents in a separate opinion filed.

WALKER, J., (dissenting).—I do not agree with the reasoning and conclusion of the majority opinion.

The plaintiff, an attorney at law, sued the defendant on a contract for the balance, $14,000, due the former for legal services. Tried to a jury there was a verdict and judgment for the plaintiff in the sum of $7,000 and interest. From this judgment the defendant appeals.

The Pleadings: The petition alleges, in substance, that defendant was indicted by the Federal grand jury on October 11, 1918; that plaintiff was employed by defendant in connection with the law firm of Frumberg & Russell to defend him and received a retainer of $1,000, and that on October 28, 1918, the defendant undertook and agreed to pay plaintiff a fee of $15,000 for his services in said cause in the event of his acquittal; that plaintiff accepted said employment and took up the defense of the defendant in connection with said other attorneys and prepared for the trial, which began on November 8th and closed on November 12th; that he fully performed his agreement and undertaking and that through the efforts of himself and his associate attorneys the defendant was acquitted; that plaintiff demanded payment of his fee and that the same has been refused. The answer is a general denial.

The Facts: The Federal grand jury at the city of St. Louis, in January, 1918, returned an indictment against the defendant charging him with violations of an act of Congress, known as the Espionage Act, punishable upon conviction by a fine not exceeding $10,000, or by imprisonment for a term not exceeding twenty years, or by both such fine and imprisonment. The defendant retained A. M. Frumberg, an attorney at law, to defend him. At the defendant's suggestion Frumberg retained the plaintiff as counsel for the defendant, because of his former experience as United States District Attorney, paying him a retainer of $1,000 and agreeing that the defendant would compensate him liberally in the event of the defendant's acquittal. Blodgett from that time took the lead in the defense. A demurrer

to a second indictment, the first having been held invalid, was sustained. A third indictment, containing ten counts, was returned on October 11, 1918.

The first time Blodgett met the defendant was at Frumberg's office October 20, 1918. Koenig there told Blodgett he had agreed to pay Frumberg $25,000 in the event of his acquittal and that he wanted plaintiff to come into the case. He said money was no object to him; that he was worth a million dollars, and would kill himself if he was convicted. They discussed the case and Koenig said he would take up the matter of plaintiff's fee in a few days. On October 28, Koenig agreed to pay plaintiff $15,000, if acquitted. This proposition was accepted by plaintiff. Blodgett told the defendant that Frumberg had paid him $1,000 as a retainer. Koenig said that was all right; that he had instructed Frumberg to pay him that sum as a retainer. The trial lasted four days, and at the conclusion of the case for the prosecution the court sustained a demurrer to the evidence and directed the jury to return a verdict of not guilty, and the defendant was discharged.

The evidence for the plaintiff is that from the time he secured the retainer he devoted one hundred days to the preparation for and the trial of the case, and that $15,000 was a reasonable fee. Nine prominent attorneys testified that a reasonable fee for plaintiff's services would be from $15,000 to $20,000. For the defense one attorney testified that $5,000 would be a reasonable fee; and another that $8,000 was a fair compensation for plaintiff's services.

The defendant testified that he employed Frumberg and paid him $7,500 for defending him against the charges in the indictment; that Frumberg employed Blodgett on his own suggestion and agreed to pay him out of his own pocket; that he, the defendant, did not employ plaintiff or agree to pay him a dollar and that plaintiff's testimony in that respect was not true.

The following instruction was given for the plaintiff:

"1.   If the jury find from the evidence that on or about October 28, 1918, the defendant was under indictment in the United States Court for the Eastern Division of the Eastern District of Missouri, charged by the United States Government with certain crimes against the laws of the United States, and that defendant Koenig employed plaintiff as a lawyer to assist in his defense against said criminal charges, and that defendant did freely and voluntarily, and without any fraud or unfairness on the part of plaintiff having been practiced upon him, knowingly and fairly agree with plaintiff that he would pay plaintiff fifteen thousand dollars for his services as an attorney in assisting in defendant's defense upon the trial of such criminal charges if the trial thereof should result in defendant's discharge and acquittal, and that plaintiff did then and there accept such employment, and did assist in the trial of defendant upon said criminal charges, and did in all things perform all necessary acts on plaintiff's part, as one of the attorneys of defendant, in defending defendant against said criminal charges, and that at the trial thereof defendant was acquitted and discharged from said criminal charges, then your verdict should be for plaintiff in the sum of fourteen thousand dollars, with six per cent interest thereon per annum from the date of the discharge and acquittal of defendant, which was November 12, 1918."

The following instructions were given for the defendant:

"2.   The court instructs the jury that if you find and believe from the evidence that the defendant Koenig did not promise or agree to pay to the plaintiff the sum of fifteen thousand dollars, as attorney's fees, then your verdict must be for the defendant.

"3.   The court instructs the jury that if you find and believe from the evidence that the relation of attorney and client existed between the plaintiff and defendant at the time of the execution of the contract, if any, sued on, then you are advised that the burden of proof

is on the plaintiff to show by the greater weight or preponderance of the evidence that the contract, if any, was fair and just, and that the plaintiff took no unfair advantage of the defendant, and that he did not contract for a greater compensation than his services were reasonably worth with reference to the character of the controversy, the skill and labor required, the responsibility imposed, the standing and ability of the attorney, together with the results attained, and defendant's ability to pay.

"4. The court instructs the jury that if the relationship of attorney and client had already been existing or established at the time that the contract, if any, in question was made, that then and in that event before you can find in favor of the plaintiff and against the defendant in this case you must find and believe from the evidence, first, that the contract, if any, was fair and equitable and that the defendant acted freely and understandingly with reference thereto, and secondly, that the amount agreed to be paid is the reasonable value of the services rendered.

"5. The jury are instructed that the opinions of the parties who testified as experts are merely advisory and not binding upon the jury, and the jury should accord to them such weight as they believe, from all the facts and circumstances in evidence, the same are entitled to receive.

"6. The court instructs the jury that the charges preferred against the defendant Koenig in the indictment read in evidence are no proof of the truth thereof, and that the defendant in this case, against whom the indictment was found, has been acquitted of the crime charged therein."

I. When the verdict was returned the defendant filed a motion for judgment *non obstante*. Counsel for the defendant contend that the fiduciary relation of attorney and client existing at the time the alleged contract between the plaintiff and the defendant was entered into places the bur-

Motion Non Obstante.

den on the plaintiff to affirmatively establish that the contract was fair, equitable and just and that the fee agreed to be paid was reasonable and not excessive; that unless such facts were found to exist, there could be no recovery on the contract, and that the verdict of the jury for $7,000 and interest conclusively establishes that $15,000 was not a reasonable fee and is equivalent to a finding that the alleged contract was not binding or obligatory on the defendant; hence the court erred in overruling defendant's motion for judgment *non obstante veredicto.*

The difficulty with this contention is that this character of motion is available only to the plaintiff and not the defendant; the remedy for the defendant under like circumstances being a motion in arrest of judgment. ''Such a motion can only be sustained when it appears from the record that the allegations in the answer constitute no defense to the action and even then such a judgment can only be rendered in a clear case on the application of plaintiff made after *verdict* and *before entry of judgment* on the verdict.'' [Hurt v. Ford, 142 Mo. 283, 296, 44 S. W. 228. See King v. Grocer Co., 188 Mo. App. 235, 238, 175 S. W. 77; 3 Bouvier's Law Dict. (Rawles Third Rev.) 2355; 1 Freeman on Judgments (5 Ed.) 810, and 1 Black on Judgments (2 Ed.) 816.]

II. It is also contended that where, as here, the plaintiff declares upon a special or express contract, he cannot recover as on a *quantum meruit;* hence the court erred in overruling the motion in arrest and entering judgment on the verdict.

Action on Express Contract: Quantum Meruit.

''The law has been definitely written in this State that in an action on an express contract a recovery cannot be had as on a *quantum meruit.* [Shoemaker v. Johnson, 200 Mo. App. 209 and cases cited.]'' [Gillham v. Metropolitan Street Railway Co., 282 Mo. 118, 131.]

The petition clearly and unmistakably declares upon an express contract; the case was tried and submitted by both parties in their instructions on that theory. Plaintiff's instruction follows the law as declared by this court in Morton v. Forsee, 249 Mo. 409, 443, and concurred in by LAMM, WOODSON, BOND and BROWN, JJ., where it was said: "But after a fiduciary relation between attorney and client has begun, agreements between them respecting the former's fee for services rendered, and to be rendered, will be zealously scrutinized and must be supported by clear proof on the part of the attorney that the amount agreed upon is fair and reasonable" (citing cases). Plaintiff's evidence tended to prove that, after his retainer and employment by the defendant as his attorney and while the fiduciary relation existed, the defendant agreed to pay him $15,000 for his services in the event of the defendant's acquittal. Plaintiff followed this with proof that the fee so agreed upon was reasonable and fair, thus undertaking to support the contract as required in the Morton case. Plaintiff's instruction requires, that if the jury found the facts as therein predicated their verdict should be for the plaintiff for the sum agreed upon, less the retainer paid, with interest. Defendant's Instructions 2, 3 and 4, when read together, are the converse of plaintiff's instruction. Neither of the instructions authorized or contemplated a verdict on a *quantum meruit*. That this was the theory of court and counsel expressly appears in a ruling of the court during the trial. Counsel for defendant objected to a question propounded to the defendant on cross-examination. The court in sustaining the objections said: "The contract is for $15,000; alleged to be; the question here is, whether it was equitable or not." There is no merit in the contention of respondent's counsel that the petition when properly construed, counts upon a *quantum meruit,* and that the case was tried and submitted upon that theory.

III.   Respondent's counsel, however, insist that defendant's motion for judgment *non obstante veredicto* was an acceptance of and an election to stand upon the verdict, and that it was inconsistent with the motion for new trial which was filed thereafter.   They cite Nixon v. Downey, 49 Iowa, 1. c. 169, in support of this view.   This is an erroneous citation.   Counsel, however, are in error in saying that appellant accepted the verdict; the contention of appellant's counsel is that the jury found that the fee claimed was excessive; hence the alleged contract was not obligatory on the defendant.   In Dezell v. Fidelity & Casualty Co., 176 Mo. 255, 75 S. W. 1102, an action on a policy of insurance, there was a verdict for the defendant.   Plaintiff's motions for a new trial, in arrest of judgment and for judgment, notwithstanding the verdict, were overruled and plaintiff appealed (p. 285).   This court reversed and remanded the judgment with directions to sustain the plaintiff's motion *non obstante,* and to enter a judgment for the plaintiff for the amount specified in the policy (p. 310).   There is no merit in this contention; nor in the others assigned.

I am of the opinon that the court erred in overruling the motions for new trial and in arrest, and that the judgment   should be reversed and the cause remanded.