**Jack POLEN, Respondent,**

v.

**KANSAS CITY CHIP STEAK COMPANY, Appellant.**

**No. 24419.**

Kansas City Court of Appeals.

Missouri.

June 6, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied
June 29, 1966.
Application to Transfer Denied
Sept. 12, 1966.

David Skeer, Judith Whittaker, Sheff-rey, Ryder & Skeer, Kansas City, for appellant.

John M. Mahota, Gage, Hodges, Park & Kreamer, Kansas City, for respondent.

BLAIR, Judge.

This is an action by Jack Polen, a former employee of Kansas City Chip Steak Company, against that company for $2,500.00 which he claims represents a bonus the company orally contracted to pay him at the end of the first year of his employment. The theory of his petition was that the contract was for payment of the bonus to him at the end of that time without any conditions or restrictions governing the obligation of the company to pay. To put it otherwise, if the company retained him in its employ for a year, he was to be paid the bonus regardless of his general performance as an employee or its quality or anything else. The theory of the company's answer was that it contracted to pay Polen a bonus of $2,500.00 at the end of his first year's employment only if he developed new and marketable products for it and to its satisfaction during that time. It claimed Polen failed to develop any new and marketable products at all during that time and therefore it was under no obligation to pay him any bonus at all under the terms of the contract. Polen did not claim he developed any such products and he flatly denied that the contract for the bonus obliged him to do so. The cause was tried before a jury and the verdict was for Polen for $1,850.00, $650.00 less than he claimed. The company appeals.

■ The contract was an express one and the only question raised by the pleadings was whether the company owed Polen the $2,500.00 bonus on his theory or owed him nothing at all. 27 Mo.Digest, Trial, ⊘333. Sufficient it is to say here that substantial evidence directed to this question was presented by both parties to sustain their respective theories of the contract. Evidence in particular will be discussed as it becomes material. The company presents two points on this appeal: (1) "The Court erred in entering judgment in accordance with the jury verdict of $1,850.00 because the verdict was contrary to and unsupported by the evidence in the case and unresponsive to the issues presented by the pleadings and evidence, for under the said pleadings and evidence the jury could only find either that the plaintiff was entitled to recover $2,500.00, or that he was entitled to recover nothing," and (2) "the Court erred in giving Instruction No. 4: 'If you find the issues in favor of plaintiff then you must award plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained,' because the instant suit was not one for damages resulting from breach of contract, but a suit for a sum allegedly due under a contract, and the proper measure of damages was the contract price." The two points presented are in reality only one, for if Instruction No. 4 was erroneous and prejudicial, in the circumstances of this case, then the Court should have refused to enter judgment for Polen on the verdict and granted the company a new trial.

■ The company cites decisions declaring the familiar rule that where a plaintiff sues on an express contract for the payment of a fixed amount of money, and the existence of the contract is denied by the defendant, the plaintiff must recover by convincing the triers of fact that he is entitled to recover on the exact terms of the contract and in the exact amount for which it calls or he can recover nothing at all. This is true because the only issue is that of contract or no contract. If the contract is established, the plaintiff is entitled to the entire amount for which it calls. If the contract is not established, he is entitled to nothing. There is no room in a case with the issue so narrowly drawn for compromise on a finding in any other amount. If the jury fails to confine itself to the only issue and undertakes, in such a case, to arbitrate and adjust what it deems to be the equities between the parties, or to do "rough justice", as some decisions say, and returns a verdict for the plaintiff for

an amount less than that fixed by the contract, both the plaintiff and the defendant have been prejudiced by its failure to confine itself to the only issue in the case and by trying some issue foreign to the case. Even though the plaintiff is willing to accept the verdict for a less amount, the defendant is entitled to have it set aside as not responsive to the issue tried by the parties and as one based on something foreign to the only issue presented. Of course, these decisions all presuppose that the only issue tried is that of contract or no contract and that there is nothing else validly in the case warranting departure from the rule they announce. We acknowledge the force of these decisions and the correctness of the rule they declare. Cole v. Armour, 154 Mo. 333, 55 S.W. 476; Martin v. Barnett, Mo.App., 208 S.W. 278; Weisels-Gerhardt Real Estate Co. v. Pemberton Inv. Co., 150 Mo.App. 626, 131 S.W. 353; Cap-Keystone Printing Co. v. Tallman Co., Mo.App., 180 S.W.2d 802; Budd et al. v. Hoffheimer, 52 Mo. 297; Francis v. Saleeby, Mo.App., 282 S.W.2d 167; Outcault Advertising Company v. Caruthersville Plumbing and Auto Company, Mo.App., 230 S.W. 340. There are others. 27 Mo.Digest, Trial, ☜333.

Polen cites decisions that announce exceptions to the general rule declared in the company's decisions and which analyze and distinguish most of them. One decision is Blodgett v. Koenig, 314 Mo. 262, 284 S.W. 505. There the suit was on an express contract for money in an amount fixed by the contract. The substance of plaintiff's verdict directing instruction was that if the jury found the existence of the contract, that it was for the fixed amount in money, and that plaintiff had performed and defendant had not, plaintiff was entitled to a verdict for the entire amount. The defendant led the trial court to give erroneous instructions authorizing the jury to return a verdict for the plaintiff in a lesser amount if it found that the amount fixed by the contract was not "reasonable". A verdict was returned for one-half of the amount for which plaintiff sued. The plaintiff ac-

quiesced in the verdict. The ruling on appeal by the defendant was that he could not complain that the verdict was returned for a lesser sum because he had invited such a verdict by the instructions he led the trial court to give. In Cabool Nat. Bank v. McDowell, 184 Mo.App. 567, 170 S.W. 682, the plaintiff sued the defendant on an express contract for $500.00. The defendant denied the contract but managed to get evidence into the record which would authorize a finding for a lesser sum if believed. The court found for the plaintiff in a lesser sum. The plaintiff accepted the finding. The holding on appeal by defendant was that he could not complain of the finding of the court for a lesser sum because he had induced it by presenting the evidence on which it could be based. Relying on these decisions Polen argues that the company deliberately injected irrelevant evidence into the case tending to lead a jury of legally untrained laymen to believe that a diminution of the amount of the bonus was warranted and the company cannot now complain. What the company managed to get into the evidence was indeed irrelevant to the issues made by the pleadings.

The evidence was as follows: At the end of his first year's employment, Polen was told by the company's vice-president that his general performance as an employee, as well as his failure to develop new and marketable products, was unsatisfactory and that his employment was terminated. The company "offered" him $400.00 "termination pay" and Polen accepted. During the last six months of his employment he had been permitted to use a company car for his personal use while he was not using it on the company's business. By agreement $25.00 per month was to be deducted from his salary as payment for his personal use of the car. This monthly $25.00 deduction was described as "nominal" and the inference was left that his personal use of the car was worth much more than $25.00 a month. There was evidence that the company forgot to deduct

$25.00 for the first month and waived its right to collect it when it discovered its oversight. It did deduct $25.00 for the use of the car for each of the remaining five months, or $125.00. When the company terminated Polen's employment he asked that the $125.00 deducted for use of the car be returned to him. The company "did give it to him". The inference from all the questioning on these subjects was that the company was simply giving Polen money which was not his as of right. The money actually given to him amounted to $525.00, not including the $25.00 monthly deduction the company forgot and then waived when it discovered its oversight.

Polen's base salary was $200.00 per week, slightly more than $10,000.00 per year. The vice-president testified that a few days before the termination of Polen's employment a check list was submitted by him to Polen. This check list related to the quality of Polen's performance of his general duties as an employee and not to his failure to produce new and marketable products. By it a list of questions was put to Polen regarding his performance of his various general duties. He testified that Polen replied to almost every question that his performance had been "hot and cold". The inference was clear that his performance of his general duties had been sub-standard. He testified that a few days later Polen's employment was terminated and he told him: "Frankly, you are not worth $10,000.00 from your record of productivity." This statement related to Polen's general performance and not to his failure to produce new and marketable products. The inference was clear that Polen had not even earned all of his base salary. All of the evidence recited went into the record without any objection from Polen.

The irrelevant evidence we have summarized did not get into the record in any purely casual or accidental way or merely as the result of a few isolated statements that slipped into the record during the course of the two day trial. The company deliberately developed this evidence at length on both days. It developed it in great detail, page after page, and from several witnesses. It developed it with no less emphasis than it placed on its relevant evidence. The company now argues that this irrelevant evidence was "obviously elicited only for the purpose of showing the total contract and the circumstances of the same." The only contract in question in this case, as the company now says, was the bonus contract, not the total contract for the general employment of Polen. Evidence relating to it was irrelevant and it cannot be disposed of now by saying that it was only elucidative of the total contract. While this is true of all of this irrelevant evidence, it is especially true of the evidence indicating that Polen's performance of his general duties was unsatisfactory.

After distributing all of this irrelevant evidence throughout the whole record, the company now strenuously argues that it tried its case strictly in accordance with the true issue, contract or no contract, $2,500.00 or nothing. The record of its performance at the trial refutes this argument. The irrelevant evidence it got into the record set the single and true issue free to explode in all directions. The trial court must have thought this evidence was validly a part of the case even though originally irrelevant. For, instead of objecting to any of it, Polen had joined issue on most of it and had struggled throughout the trial to refute it. We think it is plain that the trial court thought that the parties had voluntarily tried these irrelevant issues with Polen's implied assent and that it was its duty to instruct the jury on the theory on which Polen sat by and let the case be tried. Porter v. Equitable Life Assur. Soc. of United States, Mo.App., 71 S.W.2d 766; Schanbacher v. Lucido Bros. Grocery Co., Mo. App., 93 S.W.2d 1076; Smith v. North British & Mercantile Ins. Co., 214 Mo.App. 539, 263 S.W. 1031; Schmidt v. Windish, Mo., 304 S.W.2d 891; Doutt v. Watson, Mo.App., 231 S.W.2d 230; Fellows v. Farmer, Mo.App., 379 S.W.2d 842; 27 Mo.Digest, Trial We discern no other

theory of the view the court held of this evidence and no other theory has been suggested to us. It refused Polen's offered verdict directing instruction formulated on the theory that he was entitled to $2,500.00 or nothing. Instead it offered, and eventually gave, its own verdict directing instruction which was as follows:

### "INSTRUCTION NO. 2

Your verdict must be for the plaintiff if you believe:

> FIRST: That an agreement was made between defendant and plaintiff.
>
> SECOND: That defendant .was to pay a bonus to plaintiff as part of the agreement.
>
> THIRD: That plaintiff performed his part of the agreement.
>
> FOURTH: That defendant has failed and refused to perform its part of the agreement.
>
> FIFTH: *That plaintiff has been damaged thereby.*" (Emphasis supplied.)

Governed by this instruction, the jury could have found (1) That there was an agreement, (2) That defendant was to pay Polen a bonus, (3) That Polen performed his part of the agreement, (4) That the company failed to perform its part, and still it could not have found for Polen unless it also found that he had been damaged. Strangely enough, the company does not object to this instruction in this court, even though it is altogether inconsistent with the theory it now advances against Instruction No. 4 offered and given by the Court. Obviously, Instruction No. 2 authorized the jury to determine from all of the evidence, relevant and irrelevant, what damage Polen had suffered or whether he had actually suffered any damage at all, even though it believed his substantial evidence supporting his theory that he had entered an express contract with the company for payment of a $2,500.00 bonus un-

conditionally. It is unnecessary for us to approve or disapprove this instruction for it is not questioned on this appeal and we therefore refrain from pronouncing it correct or incorrect. But in view of the analysis we have made of this instruction, and the company's tacit acceptance of it as legally correct by failing to question it on this appeal, Instruction No. 4 necessarily follows Instruction No. 2 as a correct definition of the measure of damages. We might dispose of this appeal on this ground alone, but we refrain from doing so.

Beyond doubt, there was discussion in an instruction conference held by the parties and the court regarding whether the jury should be instructed that it could return only a verdict for $2,500.00 or nothing, or whether it should be told to award Polen "such sum as you believe will fairly and justly compensate" him "for any damages you believe he sustained", as it was finally told by Instruction No. 4. What was said about this by the parties to that conference is not in this record. However, the oral arguments of all counsel in this court are recorded as they are made and they are preserved for reference in the future. In his final argument in this court counsel for the company quite frankly told us: "It was not until after Mr. Mahota (Polen's counsel) offered an instruction for a verdict for $2,500.00 or nothing and the court refused to give it, I, in an off the cuff remark, which was mistaken, said, 'I think that is all right. I think the jury can come in for less' ".

 We are at loss to understand how counsel who strenuously argues that he tried his case strictly in accordance with the true issue, contract or no contract, $2,500.00 or nothing, can still hold to this view after frankly admitting that he made this statement to the trial court endorsing the theory of Instruction No. 4 before it was given to the jury. Even though counsel's statement was "mistaken", we know of no rule that exempts the company from its consequences. Counsel who endorse a legal theory in

trial proceedings have a duty *not* to be mistaken and they have no privilege to be relieved of a mistake they may make after the court has acted on that mistake. One cannot complain in an appellate court that an action of the trial court was error if he himself invited that action and acquiesced in it. Blodgett v. Koenig, 314 Mo. 262, 284 S.W. 505; Cabool Nat. Bank v. McDowell, 184 Mo.App. 567, 170 S.W. 682; Palmer v. Security Ins. Co. of New Haven, Conn., Mo.App., 263 S.W.2d 210; Craig v. Rhodes, Mo., 298 S.W. 756; 3 Mo.Digest, D 1, Appeal and Error Counsel's statement to the trial court requires rejection of the complaint made against Instruction No. 4 and defeats the company's appeal.

█ The company's appeal cannot succeed for another reason. We hold that Polen is amply supported by the decisions on which he relies and that the record as made by the company renders its own decisions inapplicable. Blodgett v. Koenig, supra, Cabool Nat. Bank v. McDowell, supra. By deliberately working the irrelevant evidence we have recited into the record, in what we can only regard as an effort to beat down or defeat entirely a verdict for Polen, the company has estopped itself from complaining of the refusal of the trial court to submit to the jury the sole question of contract or no contract, $2,500.00 or nothing, and of its action in enlarging by Instruction No. 4 the scope of the issues for the jury to try. 3 Mo.Digest 1, Appeal and Error It is immaterial that the evidence was irrelevant to the original and true issue. Irrelevant evidence oftentimes has probative force and this irrelevant evidence not only had probative force but it was deadly.

We do not overlook that the actual money paid to Polen plus the one monthly deduction for personal use of the company car which it waived, constituted only $550.00, and that the verdict of the jury was for $1,850.00, $650.00, instead of $550.00, less than the $2,500.00 that Polen claimed. But

there was other irrelevant evidence on which the jury could base the verdict it rendered and that evidence was that Polen had not even earned all of his $10,000.00 annual base pay. This last evidence was emphasized by the company and firmly implanted in the mind of the jury. It, too, had probative and deadly force and a logical tendency, the way the case was tried, to lead a jury of legally untrained laymen to reduce the verdict further. Actually, the company offered, and the Court refused, an instruction which would have allowed the jury to find "from the evidence that plaintiff was to be paid $200.00 a week, and a bonus would be paid to plaintiff *only* if plaintiff performed his job well *and* got certain new items or projects launched for the defendant." (Emphasis supplied.) There was no pleading authorizing the trial of the question whether plaintiff both performed his job well *and also* got certain new items or projects launched for the defendant. This offered instruction certainly reveals that the irrelevant evidence of Polen's poor performance of his general duties was not offered as merely elucidative of the entire contract as the company now says. It is true that the trial court refused the instruction but this did not take this evidence out of the case because Instruction No. 2, which the company does not question on this appeal, and Instruction No. 4, which it approved before it was given to the jury, still left the jury with authority to go ranging around the record and to consider any of the irrelevant evidence it might regard as justly warranting a reduction or a defeat of a verdict for Polen.

The company chose its course, tried the case according to its own rules, endorsed the theory of which it now complains, and now it is too late for it to complain. Sometimes litigants must suffer the consequences of their own ill-chosen strategy, and this, for the company, is one of those times. Because the strategy it chose destroys all warrant for its complaint, the judgment is affirmed.

All concur.